BENJAMIN F. WRIGHT V. SAMUEL CALHOUN AND ANOTHER.

Where two persons enter into an agreement, to the effect that if the one buy certain land at a Sheriff's sale, he shall sell a certain part of it to the other, for a stipulated price, the former becomes the agent of the latter in making the purchase ; and the doctrine of principal and agent, and not that of vendor and vendee, applies to the relation between them.

There can be no sounder doctrine of morals or of law, than that which forbids the principal to take a benefit from the fraudulent act or contract of his agent, to the injury of an innocent third person.

Appeal from Houston.    Tried below before the Hon. John H. Reagan.

On the 7th of October, 1850, Allen & Dexter recovered a judgment against Benjamin W. Wright, in the District Court of Houston County, for the sum of $602 and costs, on a note secured by mortgage on 4285 acres of land in said county, which was ordered to be sold to pay the judgment.    The same mortgage secured a similar amount not yet due.    Wright was absent at the time in Kentucky, and was cited by publication, and judgment went by default ; but no objection was made to the judgment.  John Rogers was the agent of Wright at the time, with power to take possession of his lands, collect and pay debts, &c., and afterwards proved to have had $900 of Wright's funds in his hands at that time.    An order of sale was issued on the 22nd of November, 1850, and returned on the 7th of January, 1851, "satisfied in full."  This appeared to be the only return. The fact was however, that the land was advertised and sold on the said 7th of Jan'y, to the said Rogers, for the price of $1103, and Rogers gave the Sheriff a receipt as agent of Wright, for the excess of the price above the amount of the judgment. Said receipt stated the facts fully.

The deed from the Sheriff to Rogers was recorded on the same day ; and on the same day, was made and recorded a

Wright v. Calhoun.

bond from Rogers to Samuel Calhoun, for title to part of said land, described by metes and bounds, without statement of quantity ; and the calls would not enable the quantity to be computed without a survey. The bond recited the receipt of the price, which was $650, and a perfect title was to be made within one month.

About ten days after the sale, Wright returned, and on the 12th of February thereafter, instituted this suit against Rogers and Calhoun to vacate the Sheriff's sale. The petition alleged the facts already stated, and charged " that previous to the sale, Calhoun and Rogers entered into an agreement by which said Calhoun (who had come to the sale to buy) should not bid at the sale, but Rogers should buy in the land and let Calhoun have a certrin part of it for $650 ;" that after plaintiff's return " Rogers was willing on his part to cancel all he had done, but said Calhoun having his bond for the land therein set forth would not do so ;" that the whole of the land was at the time worth $10,000, and the part got by Calhoun, $2000 ; and plaintiff offered to restore the purchase money paid by Calhoun.

Plaintiff afterwards amended his petition, by alleging that said Rogers and Calhoun, and others unknown to petitioner, combining together to defraud petitioner in the sale of said land, and having previously to the sale entered into the aforesaid agreement, which was in writing, and to carry out the same and obtain said land at a low price, and prevent competition, urged and persuaded John T. Smith, Aaron Frisby and divers other persons, bidding and intending to be present and bid at said sale, not to bid at said sale, alleging that said Rogers was the agent of said Wright, and could and would buy the same at all events, that the debt was small and the surplus he need not pay, as he could receipt for the same ; and the said confederates, well knowing of this alleged agency, used the same to prevent competition and cause said land to go at a low price ; all of which was a fraud upon petitioner and against public policy.

Defendant Calhoun denied all and singular ; and particularly denied all participation or knowledge of any fraud on the part of Rogers, and claimed to be an innocent purchaser.

Defendant Rogers denied that he had any funds of plaintiff's in his hands at the time ; alleged that any damage plaintiff had sustained, was from his own negligence in not having an agent with full power and funds to manage his business ; denied all fraud on his part ; and denied that he offered to abandon the purchase, but alleged that being threatened by the plaintiff with a long law suit, he did offer by way of a compromise, to restore the balance of the land if plaintiff would confirm his sale to Calhoun, which plaintiff refused to do, wherefore plaintiff could take nothing from said offer.

The plaintiff gave the defendants notice to produce the written agreement between them, Rogers and Calhoun, before the sale. At the trial, plaintiff proved that Rogers prevented Frisby from attending the sale, by telling him that he was Wright's agent, and that he would not let the sale come off. This was on Saturday before the sale at Cincinnati. Same day, previously, Frisby had told Calhoun that he, Frisby, was going to buy the land. Calhoun staid at Frisby's (Frisby lived in Houston county, upon the side of the land in controversy, next the county seat,) Sunday night before the sale, on his way to attend the sale. Witness, Frisby, told him it was useless to go, as Rogers was not going to let the land be sold. Calhoun said he would go any how and see how things went; that if nobody went there might be some juggling ; Rogers staid at Tryon's, near to Frisby's, on same night. Witness saw Calhoun, Rogers and Tryon, as they returned from the sale. Calhoun told witness Rogers had bought the land, and he, Calhoun, had got what he wanted. Calhoun said he always wanted things in black and white, and he made Rogers give him an obligation in writing to give him the land he wanted. Witness asked Rogers if the obligation did not specify that Calhoun would not bid at said sale. He said

Wright v. Calhoun.

it did not, but that he did not expect Calhoun to bid after that arrangement had been made. Calhoun had told the witness a day or two before the sale, that he wanted to get some 650 acres, and the supposition of the parties was, that the bond from Rogers to Calhoun contained about that amount. Rogers told witness afterwards, that he did not think at the time of the sale, he owed Wright much, but on settlement he had found that he owed him some $900. Calhoun knew Rogers was Wright's agent. Witness stated that the land was worth at that time from $1 50 to $2 per acre. Witness thought that if Calhoun got no more than 650 acres, he paid a fair price for it. Tryon suggested to Calhoun the arrangement to let him have the land he wanted. Calhoun was not present when Rogers said he did not expect him, Calhoun, to bid after the arrangement was made. Calhoun said he was not able to buy all the land. Witness said Calhoun was able to buy all the land, if he had wanted it.

The Sheriff who made the sale testified that the excess of the price of the land over the amount of the judgment, was paid to him by Rogers, and handed back by him to Rogers as the agent of Wright; that Rogers and J. T. Smith were the principal bidders at the sale; that the land sold for more than any other lands sold by witness as Sheriff at that time; witness was some time crying the sale; that there was a goodly number of persons present; witness inquired of the attorney who represented the plaintiff in execution, whether he was compelled to sell all the land together, and said attorney informed him that he was.

J. T. Smith testified that he quit bidding once to have a conversation with Tryon; that Tryon told him the land was very valuable; witness then proposed to join him in the purchase of the land; Tryon replied that he had a partner already; King introduced witness to Tryon; some person told witness, could not recollect who, that Rogers was buying the land for Wright; witness remarked that he would have

to quit bidding unless some person would loan him a cotton bale, as his money was about given out. D. B. Smith said to witness, Go on, I will loan you a cotton bale. Soon after that, Calhoun said to Rogers, Bid on, I will loan you a cotton bale. Witness went off again to talk to some one ; came back and bid again, and then remarked in a jocular way that if any person would treat, witness would quit bidding. Calhoun replied that if I would find the liquor, he would treat ; this, witness thought, was said in joke ; Rogers, Tryon and Calhoun all appeared to be interested in the sale ; witness did not recollect whether any of said three, but Rogers, bid or not. If witness had thought the sale was a fair drag, he would have bid more ; that the conduct of Calhoun, Rogers and Tryon prevented him from bidding as much as he otherwise would ; that there was evidently some arrangement between said Calhoun, Rogers and Tryon, which witness could not understand. Tryon told witness that Rogers was agent for Wright, and it mattered not what the land sold for, as he, Rogers, could receipt for the overplus as Wright's agent. Witness had not then been long in the country, and wanted a place. Tryon told witness there were some outstanding titles, that Rogers could perfect by buying the land. Calhoun did not hear the remarks between Tryon and witness.

A. C. King testified that Rogers and Smith were bidding ; Rogers asked witness if he knew Smith ; witness told him he did ; Rogers then asked witness to speak to Smith and tell him that he, Rogers, was bound to buy in the land ; witness did tell Smith, and he said he would try them a little further any how. Rogers or Tryon, witness thought, took Smith out after that and talked to him. Smith still continued to bid. Tryon and Calhoun did not bid. Rogers said he was compelled to buy the land to perfect titles. Witness had heard that Wright was dead, and did not hear the report contradicted until after the sale.

W. M. James testified that the league was better than an

average of land ; that at the request of Wright, Calhoun and Rogers, witness ran some lines around " said land," but made no calculation ; that Collard made a survey of the land named in the bond from Rogers to Calhoun, and made it over 1200 acres ; witness's recollection is that Calhoun claimed over 1200 acres ; that Wright claimed witness's survey as the proper amount, and Calhoun claimed the Collard survey ; witness thought Collard had not found the calls of the bond.

J. M. Hall, a witness for defendants, testified that the land sold for as much as lands of similar value sell for under execution. Another witness proved that the memorandum of agreement between Rogers and Calhoun before the sale, was in pencil, and was torn up when the bond was executed ; that Rogers was to sell to Calhoun the land afterwards specified in the bond, provided he Rogers, bought the land at the sale, for which Calhoun was to pay Rogers something over $600 ; that there was nothing in the writing to prevent Calhoun from bidding.

The defendants gave in evidence a letter from Wright to Rogers, dated Mt. Sterling, Ky., January 17th, 1850, in which he excused himself for not writing oftener, by the fact that his feelings had been so much annoyed in Texas, that he was glad when he could forget there was any such place ; referred to his intention to have returned long before ; and stated that he would return about the last of March, the next ; it appeared from the letter that the writer was in bad health ; it also appeared therefrom that Rogers had applied to him for a fuller power of attorney, and he promised if he did not return in March to send it; the letter then referred to some matters of business, involving disputes, and the writer seemed disposed to let the other parties have pretty much their own way ; and for Tryon, whose place adjoined this land, there was the following message :  " Give my respects to Mr. Tryon, and tell him I hope we will be able to settle our land matters without

any fuss, and you may say to that gentleman, Mr. Tryon, that he can have as much land as he may want."

The above evidence, with the statement of undisputed facts previously given, constituted the case submitted to the jury, upon which the Court charged the jury, without request, as follows :

If the proof shows that neither of the defendants so acted as to cause the land to bring a less price than it would have brought without their action, then there was no fraud on the rights of the plaintiff, and you should find for the defendants.

If Rogers' conduct was such as to prevent the land from bringing a fair price at the sale, and Calhoun's conduct was fair and honest, and did not reduce the price which the land brought, then you may find against Rogers, as to the land purchased by him, and for Calhoun, as to the land purchased by him. But if both Rogers and Calhoun so acted as to cause the land to bring less than it would have brought without their action, then you should find for the plaintiff as against both of the defendants. The main question for the determination of the jury is, whether the sale was a fair one ; if it was, then the plaintiff has no right to complain ; if it was not a fair sale, and the land was prevented from bringing a fair price, they should inquire whether either or both of the defendants were guilty of any unfairness in causing the land to bring less than it otherwise would have brought ; and if they were, they should find against such defendant or defendants. If the title of Rogers was bad for fraud, that does not necessarily vitiate the title of Calhoun. Actual fraud—that is acts done with an intent to defraud others, vitiates the title acquired by such acts, and parties may be guilty of constructive fraud by doing any acts which injure or impair the rights of others, whether they intended fraud or not ; and they are held responsible by the law for such constructive frauds as injure others, as well as for the effects of actual frauds. If Calhoun and Rogers agreed and confederated together, either

Wright v. Calhoun.

between themselves, or between themselves and others, for the purpose of bidding off Wright's land when sold by the Sheriff, and in furtherance of that agreement, and for the purpose of carrying out the objects of that confederation, they so acted as to prevent other persons from bidding for the land, or from bidding as much as they otherwise would have bid, and bought in the land at less than its fair value, then their purchase was fraudulent, and you should find for the plaintiff. If Rogers was at the time of the sale the agent, of Wright, with a general power to collect debts due Wright, and to attend to Wright's landed interest in Texas, and if at that time he had in his hands a sufficiency of money belonging to Wright to have paid the debt for which the land was sold, and under such circumstances bid off Wright's land for himself, this was a fraud upon Wright, and you should find for the plaintiff. If Calhoun did not know that Rogers was Wright's agent and that he had a sufficiency of Wright's money in his hands to have paid the debt for which the land was sold, and if he was not a party to a fraudulent combination and agreement for the purpose of buying the land at a less price than it would have brought at a fair sale, but acted in good faith and honestly in the purchase of a portion of said land, then you may find specially that Calhoun is entitled to the portion of the land purchased by him and described in the bond from Rogers to him, and find for the plaintiff as against defendant Rogers.

The plaintiff excepted to charge in general terms, but did not ask any additional instructions.

The jury found for Calhoun 650 acres of land, and against the defendant Rogers. Judgment was rendered on this verdict in favor of Calhoun for the land as described in the bond; and in favor of Wright, that as to the balance, the Sheriff's sale be declared void, &c. Motion for new trial overruled, &c.

*Yoakum & Taylor*, for appellant.

*A. P. Wiley*, for appellee Calhoun, cited Mowrey v. Walsh,

---

---

8 Cow. R. 238, to show that an innocent purchaser from a fraudulent purchaser will be protected ; and argued that there was no evidence of complicity on the part of Calhoun, in the fraud charged against Rogers.

WHEELER, J. It appears indisputably that Rogers bid off the property for Calhoun, pursuant to a previous understanding between them. The latter employed the former to purchase for him ; and thus constituted him his agent in making the purchase. It is immaterial what their private understanding was, as to the disposition of the property between themselves ; the later employed the instrumentality and agency of the former in making the purchase of the portion now claimed by him ; and the doctrine of principal and agent applies in its full force to the relation between them, as respects the purchase. It further appears indisputably, and to that effect is the finding of the jury, that the agent acted, in making the purchase, in actual fraud of the known rights of the plaintiff ; and that his conduct was such as clearly to avoid the sale, as to himself, on the ground of positive, manifest fraud. And although it were not proved that his principal, for whose benefit he made the purchase, had actual knowledge of his fraudulent acts and conduct, yet the relation of principal and agent affects him with notice of them, and with all their consequences. (Story on Agency, Sec. 140, 139, 452 ; Story on Con. Sec. 496 ; Henderson v. Railroad Company, 17 Tex. R. 560.) Nothing is better settled, than that the fraud of an authorized agent will invalidate a contract entered into by him, in behalf of his principal. It is a general doctrine of law , (says Judge Story,) that the principal " is held liable to third persons in a civil suit, for the frauds, deceits, concealments, misrepresentations, torts, negligences, and other malfeasances or misfeasances, and omissions of duty of his agent, in the course of his employment, although the principal did not authorize, or justify, or participate in, or, indeed, know of such misconduct, or even if he for-

bade the acts or disapproved of them. In all such cases the rule applies, *respondeat superior."* (Story Agency, Sec. 452.) There can be no sounder doctrine of morals or of law, than that which forbids the principal to take a benefit from the faudulent act or contract of his agent, to the injury of an innocent third person. It would indeed be a monstrous doctrine, to hold that a principal may speculate upon and enjoy the fruits of the frauds of his authorized agent, and incur no responsibility to the injured parties. It would enable one man, by employing the instrumentality of an unprincipled agent, to cheat, defraud and swindle others out of their property, and turn them over to their recourse upon the worthless agent, while he, the principal, received and retained the fruits of the iniquitous bargains. Such a doctrine can have no sanction in morals or law. Nothing can be more perfectly clear than that the principal in this case, cannot avail himself of the fraudulent contract of his agent. The purchase being fraudulent on the part of the agent, Rogers, cannot enure to the benefit of the principal, Calhoun, whether he was or was not *particeps fraudis.* That is a wholly immaterial inquiry. If, therefore, the jury found rightly, (as there can be no doubt that they did,) that the agent could take nothing by the purchase by reason of his fraud, their finding in favor of the principal was manifestly contrary to law. If the agent could take nothing by the purchase, neither could the principal ; and if there were no error in the charge of the Court, the judgment must have been reversed on the ground that the verdict was contrary to the law and the evidence. But there is the same error in the charge of the Court, which holds that, although the sale might be avoided as to Rogers by reason of the fraud, it need not be as to Calhoun, at whose instance, and for whose benefit he made the purchase.

We are referred by counsel for the appellee to the case of Mowrey v. Walsh, (8 Cowen, 238,) where it is held that though one obtain goods by a fraudulent purchase, void as to

himself, yet if he afterwards sell them to a *bona fide* purchaser without notice of the fraud, the property passes to the latter. That undoubtedly is a correct principle ; and it has been repeatedly affirmed by the decisions of this Court. (George v. Watson, *supra*, and cases cited.) But that is quite a different case from the present. There the relation of principal and agent did not apply as between the fraudulent purchaser and his vendee ; and, of course, the rule of law applicable to that relation did not obtain. The cases are governed by wholly different principles. The *bona fide* purchaser is protected because he was a stranger to the fraudulent transaction. But he who emloys the instrumentality of another to make a contract for him, is himself a party to the contract, and is as much bound by the acts of his agent in making that contract, as if he had himself personally done them ; and that is this case. Calhoun employed the instrumentality of Rogers, who acted fraudulently in effecting the purchase ; and the maxim applies in full force, *Qui facit per alium, facit per se.* If he would adopt the acts of his agent, he must take them altogether ; as well those which defeat as those which confer a benefit. If he would take the benefit of a contract, he must take it as a whole, with all its attendant circumstances. He cannot adopt just so much as confers an advantage, and reject the rest. The whole must be taken together as one and the same transaction. It is good as a whole, or not good at all. It cannot be adopted in part or rejected in part. If the whole cannot be supported, no part of it can be, but it must be rejected altogether. (Hough v. Richardson, 3 Story, R. 689.)

The judgment is reversed and the cause remanded.

Reversed and remanded.