Opinion by
White, P. J.
§ 524. Agent; difference between authority of and instructions to; case stated. Appellants, by a cypher dispatch to Morris, their broker in New York, ordered him to purchase for them fifty barrels of apples. Through his clerk, Morris purchased of appellees forty barrels of apples, and shipped the same in good order to appellants at Galveston. Appellants refused to pay for the apples, and appellees brought this suit for the price thereof, and recovered judgment therefor. . Appellants relied upon the following defenses: 1. That Morris was not their broker. 2. That if he was, he had delegated his authority to another, with whom appellants were wholly unacquainted, and with whom they had no business relations. 8. That Morris violated his instructions both as to the quantity and the kind of g’bods ordered.
The testimony on both sides seems to be agreed that the purchase by Morris was made upon an order by telegraph, in cypher, to buy fifty barrels of apples. There is a conflict as to whether any particular kind of apples were named, and as to whether Morris was the general or the special agent of appellants. Appellants insist that Morris was a special agent, and that anything done by him outside the letter of his instructions was outside his authority and not binding upon them; that the instructions were to buy fifty barrels of apples of a particular kind, whereas he bought forty barrels only, and of a different kind than those ordered. “There is a material distinction between authority and instructions uncommunicated, and not intended to be communicated to the third party dealing with the agent. Such instructions qualify the liability of the principal neither in the case of a general agency nor of a particular agency.” [1 Pars, on *473 Con. (7th ed.) p. 40.] “No man is at liberty to send another into the market to buy or sell for him as his agent with secret instructions as to the manner in which he shall execute his agency, which are not to be communicated to those with whom he is to deal; and then, when his agent has deviated from those instructions, to say that, he was a special agent,— that the instructions were limitations upon his authority, and that those with whom he dealt in the matter of his agency acted at their peril, because they were bound to inquire where inquiry would have been fruitless, and to ascertain that of which they were not. to have knowledge. If the principal deemed the bargain a good one, the secret orders would continue sealed; but if his opinion was otherwise, the injunction of secrecy would be removed aud the transaction avoided, leaving the party to such remedy as he might enforce-against the agent. From this reasoning we deduce the general principle, that where private instructions are given to a special agent, respecting the mode and manner of executing his agency, intended to be kept secret, and not communicated to those with whom he may deal, such instructions are not to be regarded as limitations upon his authority, and, notwithstanding he disregards them, his acts will be valid and bind his employer.” [Hatch v. Taylor, 10 N. H. 538; 1 Pars. On Con. pp. 41, 42, and note.] In this case, the instructions were secret, else why was the telegram in cypher?
§ 525. Principal liable for unauthorized acts of agent, when.- “There are some instances in which the principal may be liable even though he did not authorize the contract made, or though it was made in violation of his instructions. Such cases are, where the principal holds out the agent to the public, or where he knowingly permits the agent to hold himself out as having authority to make such contracts; for in such cases the principal will be liable notwithstanding the agent has violated his private instructions by making the contract. If the principal puts it in the power of his agent to make con *474 tracts, or to do acts apparently within his authority which will result in injury to innocent third persons or to the principal, the law imposes the loss upon the latter.” [W. & W. Con. Rep. § 209; ante, § 234; 1 Wait’s Act. & Def. 286; Merriman v. Fulton, 29 Tex. 97; Wright v. Calhoun, 19 Tex. 412.] In this case it makes no difference whether Morris was the general or the special agent of appellants. In either case his acts were binding upon them.
§ 526. Agent may delegate Ms authority, when; rules as to. But, it is said, “a broker employed to execute a particular commission cannot delegate his authority to another, not even to his clerk; ” and 'it is contended that, because the apples were purchased, not by Morris, but by his clerk, who was not the agent of appellants, therefore appellants are not bound.” There, are many acts which an agent must necessarily do through the agency of other persons, and which are valid when so done. If a principal constitutes an agent to do a business which obviously, and from its very nature, cannot be done by the agent otherwise than through a substitute, or if there exists in relation to that business a known and established usage of substitution, in either case the principal would be held to have expected, and have authorized, such substitution.” [1 Pars. Con. (7th ed.) 84.] It was in proof that it was a universal custom in New York for brokers to employ clerks who fill orders received. A broker doing a large business could hardly give personal attention to the filling of all orders given him, and must necessarily act through others, his clerks and employees. • [W. & W. Con. Rep. § 1175.] Authority to substitute may be and is implied “ where it is the usual custom of trade, or it is understood by the parties to be the mode in which the particular business would or might be done; or where from the nature of the agency a substitute is necessary.” [1 Wait’s Act. & Def. 216.]
§ 527. Evidence improperly admitted will not he cause for reversal, when. It is objected that appellees were *475 permitted to prove by parol the contents of the telegram from appellants to Morris, and the rule is invoked that, “if the authority of the agent is in writing, the writing must be produced and proved.” [2 Greenl. Ev. (13th ed.) § 63.] This objection should have been urged to the introduction of the evidence on the trial. “The cause having been tried by the judge, without the intervention of a jury, the admission of illegal or improper evidence will not reverse the judgment, if there is sufficient legal evidence to support it.” [Lindsay v. Jaffray, 55 Tex. 626; W. & W. Con. Rep. §§ 1195, 1219, 1343.]
February 11, 1885.
Affirmed.