GIBSON et al. v. ASSOCIATE INV.
CO. et al.

No. 9592.

Court of Civil Appeals of Texas. Austin.
Oct. 30, 1946.

Wm. Yelderman, of Austin, for appellants.

H. H. Shelton and Wright Stubbs, both of Austin, for appellee Clifton B. Huff.

BLAIR, Justice.

Appellee Associate Investment Company sued Clifton B. Huff on his promissory note for $405, and to foreclose a mortgage (conditional sales contract) lien on a 1937 Pontiac automobile, alleging that the note was executed by Huff to J. W. Gibson as part of the purchase price of the automobile, and that appellee Associate Investment Company was the bona fide purchaser and holder in due course of the note and mortgage lien securing it. Appellee Investment Company prayed that a receiver be appointed to take charge of the automobile, which was done.

Huff impleaded J. W. Gibson as a third party defendant, and by his answer and cross-action to the suit of appellee Associate Investment Company alleged that at the time it purchased the note and mortgage lien he (Huff) was in fact and in truth indebted to Gibson only in the sum of $79, in that the O. P. A. ceiling price of the automobile was $479; that he had paid $400 on the purchase price of the automobile instead of $178.74 as shown in the conditional sales contract, and that such fact of the payment of $400 down on the purchase price of the automobile was known to appellee Associate Investment Company, and Huff prayed for cancellation in part of the note and for damages for wrongful receivership.

As against appellant J. W. Gibson, Huff sought to recover treble the amount he paid over and above the ceiling price for the automobile.

At the conclusion of the evidence the trial court instructed a verdict and rendered judgment for appellee Associate In-

vestment Company against Huff for the full amount of the note and for foreclosure of the mortgage lien on the automobile; and by the same instruction denied Huff any relief against said Company; from which judgment Huff gave notice of appeal and filed a supersedeas and appeal bond in the sum of $1500. No contest is here made of this judgment, and it is affirmed.

On the trial of the suit of Clifton B. Huff against appellant J. W. Gibson for treble the amount he paid over and above the O. P. A. ceiling price for the automobile, the jury found in answer to special issues (1) that Clifton B. Huff paid by check or cash to Ted Lucas, the agent of Gibson, $400 as part payment of the purchase price of the automobile; and (2) that appellant Gibson received by check or cash $400 as part payment of the purchase price of the automobile. Upon these findings of the jury and the undisputed and admitted facts, judgment was rendered for Huff against Gibson for $663.78, being treble the amount which the jury findings and facts show was paid by Huff over and above the O. P. A. maximum ceiling price of the automobile. From this judgment Gibson gave notice of appeal and filed a supersedeas and appeal bond in the sum of $1623.56. Appellant Gibson first contends that the jury finding that he received $400 by cash or check as the down payment on the automobile is without any support in the evidence. The contention is not sustained.

Appellant Gibson was a dealer in second-hand automobiles. Ted Lucas was his authorized agent and sold appellee Huff the 1937 Pontiac automobile in question. It was agreed that the O. P. A. ceiling price on the automobile was $474. Huff testified that he paid Lucas $400, of which $200 was paid by check on the Austin National Bank, payable to Gibson, which he endorsed and cashed; and that $200 was paid in cash to Lucas by Huff at his father's home; the father testifying that he saw his son give to Lucas, or someone sitting in the automobile in front of his home, what seemed to be a large amount of money. The conditional sales contract recited that Huff paid $178.74 and executed a note for the balance of the purchase price, recited to be $301. By subtracting the $178.74 recited cash payment from the $400 Huff testified he paid as the down payment, it is shown that Huff paid $221.26 over and above the O. P. A. ceiling price of the automobile, and treble this amount is the judgment for $663.78.

The O. P. A. regulations required that a card showing the ceiling price should be attached to or displayed on the automobile when offered for sale. Huff testified that the card attached to or displayed on the automobile at the time he first looked at it was $695. Shortly after the purchase of the automobile Huff and his wife discovered that the O. P. A. ceiling price was only $474, instead of $695 as shown by the attached card. Both Huff and his wife called upon Gibson and placed the foregoing facts before him. Huff told him that he thought the O. P. A. ceiling price of the automobile was $695; that he paid Lucas $400 as the down payment; which together with the note for $405 showed that the automobile cost him $805. Gibson made some calculations at the time and offered to pay Huff $8.70 as overcharge for the automobile. During these conversations Gibson did not deny having received the $400 cash payment on the automobile. He tried to subtract the $400 from the $695 purchase price to get the balance of $301 as the principal of the note. It was thus he came to the conclusion and offered to pay Huff $8.70 as an overcharge for the automobile. Gibson denied on the trial that he had received $400 as down payment on the automobile, and claimed that he received only the $200 check as the down payment thereon.

Lucas, the agent of Gibson, denied that Huff paid him $400 as down payment on the automobile. He testified that Huff only gave him the $200 check; that he retained $178.74 of the amount and paid Huff $21.26 in cash as change. Lucas admitted that he drove Huff in the automobile to the home of Huff's father, to show him the automobile; but that the father only came out of the house, and that he had no conversation with him.

◼ The foregoing evidence, though conflicting, supports the findings of the jury that Huff paid Lucas and Gibson received $400 as down payment on the automobile.

The remaining point of appellant Gibson is that, in absence of evidence showing that he authorized or directed Lucas, his agent, to receive and demand in excess of the O. P. A. ceiling price for the automobile, or that he ratified such action, it was error to render judgment for treble the amount of the overcharge, because under such circumstances the principal is not liable for the criminal or tortuous acts of the agent. The point is not well taken, because the foregoing facts show that Gibson retained the $400 after being informed by Huff that he had paid $400 to Lucas. Gibson then made calculations based upon the claim that Huff had paid $400 as the down payment on the $695 purchase price of the automobile, and offered to return $8.70 as an overcharge on such basis of calculation.

From the foregoing facts it is clear that the acts of the agent were made known to the principal, and that he refused to right the wrong. The rule applicable is stated in 32 Tex.Jur., 757, 758, as follows:

" * * * where a statute imposes a penalty for a wilful act, yet it seems that, in the absence of some statutory indication to the contrary, wilfulness in the sense of deliberate wrongdoing is not essential. All that is required is that some breach of duty should be brought home to the defendant, either directly or through the act of one expressly or impliedly authorized to represent him."

Huff's suit under the facts alleged was also one for fraudulent concealment of the O. P. A. ceiling price of the automobile, by placing thereon a card showing the ceiling price to be $695, instead of $474, the actual ceiling price of the automobile. After being informed of these facts, Gibson refused to right the wrong done by his agent. The rule applicable to these facts is quoted in 2 Tex.Jur., 549 and 550, from the early case of Wright v. Calhoun, 19 Tex. 412, 421, as follows:

" 'There can be no sounder doctrine of morals or of law, than that which forbids the principal to take a benefit from the fraudulent act or contract of his agent, to the injury of an innocent third person. It would indeed be a monstrous doctrine, to hold that a principal may speculate upon and enjoy the fruits of the frauds of his authorized agent, and incur no responsibility to the injured parties. It would enable one man, by employing the instrumentality of an unprincipled agent, to cheat, defraud and swindle others out of their property, and turn them over to their recourse upon the worthless agent, while he, the principal, received and retained the fruits of the iniquitous bargains. Such a doctrine can have no sanction in morals or in law.' "

The judgments of the trial court are affirmed.

Affirmed.