SAME TERM.    *Strong, Morse* and *Barculo*, Justices.

## WILLINK *vs.* VANDERVEER.

The defendant, and B. contracted with N. for the purchase of a farm of about 100 acres belonging to him at F., at the price of $350 per acre.   Prior to receiving a deed therefor, the defendant applied to the plaintiff and one V. to join him in the purchase of lands at F.; to which they assented, and authorized him to make the purchase for their joint benefit and account, on the best terms he could.   He then contracted with S. & S. for the purchase of 52 acres more at $300 and $250 per acre.   This purchase also included certain wood and meadow lands.   Subsequently the defendant represented to the plaintiff and V. that he had effected a purchase of lands from N. and from S. & S. at the prices of $400 and $350 per acre, on the joint account; concealing from them the fact that he, together with B., already had contracts for the land, and concealing from them also the fact of the purchase of the wood and meadow lands.   The plaintiff and V., relying on the representations of the defendant, as to the price at which the lands were bought, paid to him their respective portions of the cash payments required to be paid, and of the expenses attending the purchase.   The conveyances of the lands purchased were taken in the name of the defendant.   When the deeds were executed, false considerations were inserted therein, for the purpose of carrying out the deception practised upon the plaintiff and V.   The result was that of the lands which were contracted to be purchased by the defendant and B., for about $45,000, two-thirds were sold to the plaintiff and V. at the rate of upwards of $58,000, after reserving to the defendant the meadow and wood lands; which the defendant conveyed to B. without the knowledge of the plaintiff and V.   Upon a bill filed by the plaintiff, praying for an account, and for payment to him by the defendant of all sums paid to the defendant by the plaintiff, over and above his share or proportion of the actual purchase money of the premises; and for an account of the avails of the wood land and meadow, and for the payment, to the plaintiff, of an equal share thereof;

*Held,* that the defendant acted as the *agent* of the plaintiff and V. in consummating the purchase; and that as such agent he had no right to become himself the seller, or to make a profit out of his principals.

*Held also,* that the plaintiff was entitled to an account of the profits made by the defendant, out of him, on the purchase of the premises, including the value of the wood land and meadow, and to a decree for the re-payment of the excess of moneys paid by him over and above his proportion of the price paid by the defendant for such premises, with interest; and that in ascertaining such excess, the defendant should be charged with the value of the wood land and meadow.

If a party makes a false representation to another person who is about to act upon the faith of that representation, the former must make the representation good, if he knows it to be false.

Where a party, intentionally, misrepresents a material fact, or produces a false impression, in order to mislead another, or to entrap or cheat him, or to obtain an

Willink *v.* Vanderveer.

undue advantage of him; in every such case there is a positive fraud, in the truest sense of the term.

Where a party files a bill against another for an account and payment of moneys obtained from him by the latter, upon pretence of paying for lands purchased on joint account, in pursuance of a parol agreement between the parties, but which moneys were not in fact applied for that purpose, the defendant cannot set up the objection that the agreement under which the lands were purchased was by parol, and therefore void by the statute of frauds.

Where the plaintiff's claim rests upon actual fraud, such fraud may always be proved by parol; even to avoid the statute of frauds.

In Equity. This was an appeal from a decree of the former assistant vice chancellor of the first circuit, dismissing the plaintiff's bill. The nature of the case, and the facts therein as stated in the pleadings, and established by the proofs, appear sufficiently from the opinion of the court. The bill prayed for an account and for payment by the defendant to the plaintiff, of all sums paid to him by the plaintiff over and above his share or proportion of the actual purchase money of the premises; and also for an account of the avails of the wood land and meadow, and for the payment to the plaintiff of an equal share thereof; or that the value of such wood land and meadow might be deducted from the sum actually paid for the farm, wood land, and meadow, and the balance only charged on the land conveyed to the defendant by J. and M. S. Neefus; and for general relief.

*John A. Lott & D. B. Ogden,* for the plaintiff. 1. The purchase made by the defendant was for the joint and mutual benefit of himself, the plaintiff, and Joaquim Jose Vasques. 2. But even if the purchase of the property were originally on the sole account of the defendant, yet the nature and circumstances of the transaction between the defendant and the plaintiff, entitles the latter to the same relief as if the purchase had been made on joint account of the plaintiff, the defendant, and Vasques. 3. The agreement charged in the bill between the plaintiff and the defendant was not an illegal one, and is not against the policy of the law. 4. The plaintiff is entitled to a decree for an account by the defendant, and for re-payment of

Willink v. Vanderveer.

all moneys paid to him by the plaintiff on account of said purchase, over and above the plaintiff's share of the purchase money, with interest. 5. The plaintiff is also entitled to the payment of the equal one-third part of the price for which the two pieces of wood land and meadow were sold, by the defendant, with interest. 6. The decree of the assistant vice chancellor ought, therefore, to be reversed, with costs, and a decree ought to be made in conformity with these principles.

*W. Rockwell*, for the defendant. The transaction, as set forth in the plaintiff's bill, and forming the gravamen of his charge, is illegal and against the policy of the law, and ought not to be enforced. The plaintiff's charge, as set forth in the bill, is untrue in fact, and is not supported and established by the evidence. The evidence shows, positively, that the premises in question were purchased upon an understanding and arrangement that T. J. and C. J. Bergen were to be interested in the purchase, and that the premises were to be held by the defendant for their benefit, to the extent of two-thirds of the estate, and interest therein, and not for the benefit of the plaintiff and Vasques; and that the latter came in as subsequent purchasers from the defendant.

*By the Court*, BARCULO, J. The case presents for our consideration two questions; one of fact, and one of law.

The first is, whether the defendant, by false and fraudulent representations, obtained and appropriated to his own use, several thousand dollars of the plaintiff's money. To decide this, it will be necessary to look carefully through the pleadings and proofs.

The bill states that in the spring of 1835, the defendant applied to the plaintiff and one Vasques to join him in the purchase of certain lands at Flatbush. To which they, confiding in his judgment, assented, and authorized him to make the purchase, for their joint benefit and account, on the best terms he could. That the defendant, a few days thereafter, informed them that he had bought a farm of John and Michael

Neefus, containing about 100 acres, for $400 per acre; one half of the purchase money to be paid in cash or notes, and the other half, secured by bond and mortgage on the premises. That about the same time the defendant negotiated the purchase of about 40 acres of one Stephen B. Schoonmaker, and 12 acres of Cornelius Suydam, and represented that the price to be paid therefor was $350 per acre. That the deeds of said lands, by an understanding among the parties, were taken in the name of the defendant. That the plaintiff and Vasques, relying on the good faith of the defendant, advanced and paid to him their respective portions of the cash payment required to be paid, and of the expenses, &c., incident to the purchase. That the defendant, in addition to the lands conveyed to him by Neefus, bought, as a part of the same purchase, two pieces of wood land and two pieces of salt meadow, of considerable value, which the defendant caused to be conveyed to his brother-in-law, Bergen, without the knowledge of the plaintiff and Vasques, and with the view of defrauding them. That, after an ineffectual attempt to sell the premises at auction, as building lots, a partition was made, and the defendant conveyed to the plaintiff his proportion of the property; he assuming a due proportion of the bonds and mortgages, which he afterwards paid. That the plaintiff, within three months before filing the bill, first discovered that the defendant had practised a fraud upon him, and that the price of the Neefus farm was in fact but $30,000, instead of $40,000, including the wood and meadow land; of which $10,000 only was paid in cash, and the remaining $20,000 secured by bond and mortgage. And that the defendant had fraudulently procured the sum of $40,000 to be inserted in the deed as the consideration, to deceive and defraud the plaintiff. That the defendant, instead of paying $350 per acre to Schoonmaker, as represented by him, had paid only $300; and that the defendant requested Schoonmaker to insert a false consideration in like manner, in the deed. That, instead of paying Suydam $350 per acre, the defendant paid only $250 per acre, and the larger sum was put

into the deed as the consideration, by the contrivance of the defendant, to defraud the plaintiff.

The answer, which was put in without oath, stated that the defendant and his brother-in-law, Bergen, became the purchasers of the said lands, in the spring of 1835 ; the defendant having an interest of one-third, and said Bergen the remaining two-thirds ; that after thus purchasing, the defendant and Bergen concluded to sell, and that the defendant informed the plaintiff " accidentally," that he had purchased the property, and was willing to sell it at $400 an acre; that the plaintiff thereupon requested him to sell him a part of said lands, and said that he should like to have one-third for himself and one-third for his friend Vasques ; that they had means, and would build on and improve their portions, and thus enhance the value of the residue : that after other interviews, and after the plaintiff and Vasques had examined the premises, the defendant sold them each one-third ; the Neefus farm of 100 acres, at $400 an acre, and the rest at $350 an acre. The answer expressly denied that the defendant ever informed the plaintiff, or Vasques, what he had given for said lands, or made any false or fraudulent representations to either of them in relation thereto.

The testimony, at first view, seems to be conflicting ; but is easily reconciled. The apparent conflict arises from the circumstance that the counsel who examined the witnesses were aiming at an immaterial issue ; the establishment of which, on the part of the plaintiff, was wholly unnecessary, if not fatal ; and on the part of the defendant, would not make out a defence. That issue was, whether the premises had been purchased before the interview between the plaintiff and the defendant, in relation to the plaintiff's becoming interested therein. Upon this point, I think the evidence preponderates in favor of the defendant : although the opinion of the vice chancellor assumes the facts to be as set forth in the bill.

The material branch of the inquiry is, whether the defendant proposed to the plaintiff to join in the purchase of these lands, and a few days thereafter represented to him that he had

effected the purchase at the prices of $400 and $350 per acre; and thus obtained from him his share of the purchase money at those rates. And this part of the case, I think, is established in favor of the plaintiff. Vasques testifies that it was proposed by the defendant, that he and the plaintiff should join him, and he would purchase it and have all the trouble of the transaction. Soon after that, he says, " the defendant said he had bought the Neefus farm at $400 an acre, and we made the payment accordingly." The other lands were bought on joint account, and for the same purpose as the lands bought of Neefus. He reported the purchase; he told the parties he had bought at $350 an acre. He told Vasques he had bought the land of Neefus, at $400 an acre, on the joint account. He told Vasques and the plaintiff he had bought the land of Schoonmaker and Suydam, at $350 an acre, for the same concern. The testimony of Hoskins confirms the statement of Vasques.

I am unable to discover any evidence that seriously controverts this view of the case. There is, to be sure, some discrepancy as to dates. Vasques thinks the first payment made by him was on the 13th or 14th of April, and that the first interview was a very few days before. On the other hand, Neefus thinks the first payment of $2000 was made somewhere about the 8th, 9th or 10th of April; that Bergen and the defendant wanted four or five days after the bargain to pay it in. Bergen also says the payment of $2000 was made by him to Neefus about the 7th or 8th of April, and before the parties went to view the premises. Supposing it to be conceded that the defendant's witnesses are right in this respect, let us see how it affects the case.

It appears, then, that the defendant and his brother-in-law, Bergen, had become the purchasers, by contract, of this farm, within the first two or three days of April, for $30,000, including the wood land and meadow. In about a week after, the defendant went to the plaintiff and Vasques and induced them to join him in a pretended purchase of the farm, without the wood land and meadow, for $40,000; and by representing that he paid Neefus that sum, obtained the like proportion from

them. If therefore it be true, as contended by the defendant, that the purchase was made the first of April, then, if Vasques is to be believed, although mistaken as to the precise day, the defendant was guilty of an outrageous falsehood when he pretended to the plaintiff and Vasques that he had not purchased, but thought he would purchase, and subsequently that he had purchased, for $400 an acre. It is therefore a matter of very little consequence *when* the purchases from Neefus, Schoonmaker and Suydam were made. If the defendant had already become the owner when he proposed to the plaintiff and Vasques to join him in the purchase, he is as guilty of a fraud upon them, as if he subsequently purchased, and deceived them as to the amount paid for the land. In either case, he obtained from them money by false and fraudulent representations as to the price of the land.

The insertion of a larger consideration than the true one, in the deeds from Neefus and Suydam, is a circumstance which, if standing alone, would not be entitled to much weight. But it is certainly somewhat remarkable that the consideration in serted corresponded precisely with the amount of the purchase money, as represented by the defendant to the plaintiff and Vasques. I cannot resist the conclusion that this was a part of a skilfully contrived scheme of keeping the other parties in the dark as to the true amount of the purchase money.

Another circumstance which strengthens the case for the plaintiff, is found in exhibits Nos. 3 and 4. They are accounts, in which the defendant charges the plaintiff with one-third of certain expenses, which were paid by the latter. Among these are charges for recording the deeds from Neefus, Schoonmaker and Suydam ; " Bonus to Neefus, $125 ;" and the price of a gown to Mrs. Schoonmaker, probably for releasing her inchoate right of dower. I am unable to reconcile this testimony with the case as set forth in the defendant's answer. If he and Bergen had become the purchasers, and sold out a third to the plaintiff and a third to Vasques, why should the latter be charged with the recording of the deeds to the defendant? What has the plaintiff to do with paying Neefus a bonus of

$125 ? Why should he bribe the married women to get them to sign the deeds ? If the plaintiff purchased of the defendant, it was his business to obtain and perfect his title, at his own expense.

The view of the case with which the testimony is all reconcilable, and which I deem the true one, is this. The defendant and Bergen contracted for the Neefus farm in the fore part of April, 1835. Pending the negotiation and before the deeds were given, the defendant saw the plaintiff and Vasques, and induced them to join him in his proposed purchase. For the purpose of speculating out of them, he concealed the fact that he already had a contract, and pretended to purchase on joint account, at an increased price. This price was fixed as high as he supposed, or ascertained, the others would pay. In the mean time the Schoonmaker and the Suydam lands were obtained in the same manner. When the deeds were executed, a false consideration was inserted, to carry out the deception. And the property being considered as purchased for the benefit of all three, each one properly paid one-third of the expense of obtaining the title, including presents, bonus, recording fees, &c. The result of the operation was that the land, which had been bought for about $45,000, was put off upon the plaintiff and Vasques at the rate of upwards of $58,000, reserving to the defendant and Bergen the meadow and wood land : the latter of which was subsequently sold for the nominal sum of $7000, although probably not more than half that amount was realized. The question of *fact*, therefore, with which we started, is answered in the *affirmative*.

The remaining question, of *law*, is, whether such a state of facts entitles the plaintiff to any relief. There can be no doubt that the representations, by which the plaintiff was induced to embark in this speculation, were of the character denominated *fraudulent*, as distinguished from those which are merely *false*. They were made in a matter of business, in which the defendant assumed to act as agent for the others, in which he had peculiar means of knowledge, and in which the representations were fortified by the deeds in such a manner as to deceive a man of ordinary care and prudence. It is said to be a very old

head of equity, that, if a representation is made to another person, going to deal in a matter of interest, upon the faith of that representation, the former shall make that representation good, if he knows it to be false. (*Story's Eq.* § 191. *Evans* v. *Bicknell,* 6 *Ves.* 173.) When the party intentionally, or by design, misrepresents a material fact, or produces a false impression in order to mislead another, or to entrap or cheat him, or to obtain an undue advantage of him; in every such case there is a positive fraud, in the truest sense of the terms. (*Stor. Eq.* § 192.)

By applying these well settled and familiar principles, there is no difficulty in giving relief in this case. But it is said by the defendant's counsel, and by the learned assistant vice chancellor, who decided this case originally, that there are insuperable legal objections to the plaintiff's right to recover, arising, (1.) From our statute in regard to trusts. (2.) From the statute of frauds. We think these statutes have no manner of application to the case, regarded as it must be, as a case of *actual fraud.* It must be admitted, however, that the case as argued by the counsel, and as presented most prominently in the pleadings, would admit, to some extent, the application of those statutes, and naturaly lead to the train of reasoning set forth in the opinion of the court below. They reason thus in regard to the first of the above named statutes. ' The plaintiff paid his money under an agreement that the deed should be taken in the name of the defendant ; this agreement is illegal and the absolute title vested in the defendant (1 *R. S.* 728, § 51.) The plaintiff could not have compelled the defendant to convey one third to him; nor can he recover back any portion of the money paid by him.' The defect in this reasoning consists, in assuming that the plaintiff shows no title to relief, *except through the agreement.* So far from this being the fact, the plaintiff derives no aid from the agreement, at all. It may be entirely laid out of the case, without impairing his rights. Supposing, for instance, that the agreement had been, that the title should be taken in the names of all three—which would have been a valid agreement—the plaintiff's claim to redress would have been the same as it now is. In both cases it

would depend *not upon the agreement, but upon the fraud* of the defendant, by which he obtained the plaintiff's money, under the pretence of paying for land, and then put it into his own pocket. It matters not, therefore, what the agreement was, nor in fact whether there was any specific agreement whatever.

Again, it is said, " It is no more a fraud than the case of a man taking a deed to himself, when another has paid the money, and then holding it against that party." *That* is no fraud; because the statute *legalizes* it. But, in order to make the cases more similar, suppose the party taking the deed *obtains* it by art and deceit, or without the consent of the person paying the money, could there be any doubt that equity would relieve.

Now in the case before us there is no dispute between the parties as to the title, nor as to the purchase money paid for the lands. The plaintiff merely claims the moneys obtained by the defendant, under *pretence* of paying for the lands, but which were not in fact applied for the purpose.

In regard to the statute of frauds, it is contended that this agreement, that the defendant should purchase, and the plaintiff have an interest in the lands, cannot be proved by *parol.* This might be so, if the plaintiff was seeking to *enforce* the agreement, and obtain his share of the land. But this is not the case. The agreement has been performed by both parties. The agreement is fully executed. It is upon *actual fraud* that the plaintiff's claim rests—and that may always be proved by parol, even to avoid the statute of frauds. (*Story's Eq.* § 330.)

There is another principle of law upon which this case may rest safely. It is thus laid down by Mr. Paley. It is a fundamental rule, applicable to both sales and purchases, that an agent employed to sell, cannot make himself a purchaser; nor, if employed to purchase, can he be himself the seller. (*Paley on Agency*, 32.)

It appears, from the direct testimony of Vasques, as well as the circumstances of the case, that the defendant assumed to act as *agent* for the others, in consummating the purchase.

Willink *v.* Vanderveer.

If then it be true, as he states, that he and Bergen had already obtained a contract for the lands, the defendant became the *seller* to his principals, of his own land, instead of purchasing from others, according to the terms of his agency. It is unnecessary to cite further authorities to show that this is wholly inconsistent with the character of an agent. It is too plain to require an argument, that an agent whose duty it is to buy on the best possible terms for his employer, cannot consistently sell his own property to him. There must be a conflict of interest, in such a case.

Let us rather look into the authorities and see what remedy courts of equity give the principal against his unfaithful agent. The rule seems to be that the agent is held accountable for the *profit* he makes by thus dealing with his principal. This principle is recognized by Lord Thurlow in *East India Company* v. *Henchman*, (1 *Ves. jun.* 289,) where a bill was filed by the company against one of their servants, for an account of profits, made by supplying the company with silks under a collusive contract with the board of trade. " If," says he, " being a factor, he buy up goods which he ought to furnish as factor, and instead of charging factorage duty, or accepting a stipulated salary, he take the profits and deal with his constituent as a merchant, this is a fraud for which an account is due." So in the case of *Massey* v. *Davies*, (2 *Ves. jun.* 317,) an agent employed to furnish timber for a colliery was decreed to account for the profits, made by selling his own timber to his principals under the name of another person, with whom he had secretly engaged in partnership.

This rule seems to be just and equitable. Applied to the present case, it entitles the plaintiff to an account of the profits made by the defendant out of the plaintiff on the purchase and sale of the premises in question, including the value of the wood land and meadow. In other words, the plaintiff is entitled to a decree against the defendant for the repayment of the excess of moneys paid by the plaintiff, over and above his proportion of the price paid by the defendant for said premises, with interest thereon; and in ascertaining such excess, the defendant

is to be charged with the value of said wood land and meadow.

A decree must, therefore, be entered, *reversing* the decree of the assistant vice chancellor, with provisions in conformity to the above principles, *with costs.*

