## HAMMOND v. HUSSEY.

The confidence induced by undertaking any service for another, is a sufficient legal consideration to create a duty in the performance of it.

The defendant, being the teacher of a high school, undertook, at the request of the school committee, to examine candidates for admission to said school as scholars therein, and truthfully to report to the committee concerning their qualifications. The plaintiff submitted himself to such examination, and was found properly qualified; but the defendant maliciously, deceitfully, and falsely reported to the committee that the plaintiff was not so qualified; by reason whereof the plaintiff was excluded from the high school and deprived of its benefits.

*Held*, that the plaintiff might maintain an action on the case against the teacher to recover his damages, occasioned by reason of such false and malicious report.

CASE by Charles B. Hammond against Thos. W. H. Hussey. The plaintiff's declaration was as follows:

In a plea of the case for that at said Nashua, on the 13th day of April, 1869, the defendant being the principal and teacher of the high school of the school district in said Nashua, under the authority and by the direction of the school committee of said district, was then and there employed to inquire into the qualifications of certain of the scholars of said district, to be retained in said school as scholars therein, and truthfully to make report thereof to said committee; and the plaintiff, being one of said scholars, and being a scholar in said school, was then and there examined by the defendant as to his qualifications to be retained in said school as such scholar; and the defendant, with the intent wrongfully to deprive the plaintiff of the benefits of instruction in said school, and unjustly and unlawfully to exclude him as a scholar therefrom, maliciously, deceitfully, and falsely reported to said committee that the plaintiff was not entitled to be retained in said school as a scholar therein, because upon said examination he was not found qualified, according to the standard fixed upon by said committee for such retention in said school, when in truth and in fact he was so qualified, and upon said

examination approved and exhibited himself to be so qualified according to said standard; by reason of which malicious, deceitful, and false report of the defendant, the plaintiff was wrongfully excluded from said high school, and unjustly deprived of the benefits and advantages of said school, and of the teachings and instructions bestowed upon and given to the pupils therein, to wit, from said 13th April, 1869, hitherto.

And the plaintiff avers, that afterwards, to wit, on said 13th day of April, 1869, he attended said high school, and claimed to be received as a scholar therein, but the defendant wrongfully and unjustly excluded him therefrom, and refused to receive him as a scholar therein, and to give him the benefit of the instructions and teachings of said high school. To this declaration there was a general demurrer which was joined, and the questions thus raised were reserved for the consideration of this court.

*A. W. Sawyer*, for the defendant.

I. The admission, assignment, and classification of scholars, to a school in the city of Nashua, at the time of the alleged grievance, were made by statute law the duty of the school committee. It was no part of a teacher's duty to examine scholars for admission to any school. No one was authorized to perform that duty but officers under oath, who were selected from the citizens of the district, on account of their peculiar fitness, to act in that office; if not, the law presumes the office of school committee involves trust and confidence, and they are prohibited from acting until they have taken the oath of office. General Statutes, ch. 17, sec. 4. The oath is one of the safeguards attached to the office, upon which the parent relies to protect the rights of his child, making the committee responsible for their acts in relation to the admission, retention, or rejection of a scholar from any school. The fact that the law requires them to act only under oath, and that their office is in the nature of a judicial one, seems also to require that they all confer and act together, unless there be a provision that a less number may proceed; and for these reasons, there being no express power to the contrary, they cannot delegate that duty, power, or authority conferred on them, or escape the responsibility. The acts of the committee involve exercise of judgment and discretion, and therefore cannot be delegated. A delegated authority can ordinarily be executed only by the persons to whom it is given—the legal maxim being *delegatus non potest delegare*. *Moor* v. *Wilson*, 26 N. H. 332; *Powell* v. *Tuttle*, 3 N. Y. 396; *Downing* v. *Ruger*, 21 Wend. 178; *State* v. *Buffalo*, 2 Hill 434. Whatever means the committee may employ to ascertain the fact whether a scholar shall be admitted or rejected from any school, the duty and responsibility rest alone upon them. It matters not, so far as the duty of examining and the responsibility of determining the respective rights of scholars to be admitted are concerned, what modes of strategy or what artifices may have been pursued by others, to influence the committee to admit or reject; the duty and

responsibility still rest upon them, by force of statute law. Indeed, it might well be contended that, without any express provision, the general charge and superintendence includes the power of determining what pupils shall be received and what rejected.

II. The defendant contends that the declaration shows no cause of action against him. 1. There is no privity of contract between the plaintiff and the defendant. 2. The defendant is not an independent public officer, bound to exercise the functions of his office for the benefit of individuals, under fixed and settled rules and obligations prescribed by law, like a sheriff; nor is he to exercise his own will and judgment in receiving or excluding pupils from the public schools. *Spear* v. *Cummings*, 23 Pick. 224. 3. The law imposed upon the defendant no duty to examine scholars for admission or rejection, and he could not, then, be guilty of nonfeasance, misfeasance, or malfeasance in the discharge of an official or legal duty. In order to charge a person in an action on the case for negligence in the performance of a public work, the law must have imposed a duty or conferred an authority to do such work. Where the officers and agents of a city assumed to build a bridge, under the authority of a statute not constitutionally passed, for want of a two-thirds vote, and the bridge fell in consequence of the negligent construction thereof, the city was not liable to an action at the suit of a person injured by the accident. The architect or builder of a public work is answerable only to his employers for any want of care or skill in the execution thereof, and he is not liable to third persons for accidents or injuries which may occur after the completion of such work. *Mayor of Albany* v. *Cunliff*, 2 N. Y. 169—2 Comstock 169. The learned judge, among other things in the above case, says: The law must have imposed a *duty* on him so as to make that neglect culpable. Again, he says: Suppose a traveller upon a public road comes to a narrow and deep stream, which he cannot cross without a bridge; so he builds one, and passes over;—shortly another traveller attempts to pass, with his horses; the bridge breaks, horses are drowned. Has this man a remedy against the man who built the bridge? No, because the law had imposed upon him no duty to build it: and so in relation to the defendant. If the law had imposed upon them no obligation to construct the bridge, they must be regarded as *mere volunteers*, and in no way responsible to the plaintiff for what they did or neglected to do. *Ibid*, 170. Again, he says: I can find no adjudged case, nor any rule in any elementary work, recognizing so broad a ground of liability. I have found no case in which a person has been held liable for negligence in the performance of any work, unless his negligence was in violation of contract, express or implied, or of a *duty* which was imposed on him by law. *Ibid*, 173. An action does not lie, where the law lays no duty upon him. Buller, N. P., or Cr. El. 219. An action does not lie, where another remedy is given. Com. Dig., vol. 1, 172. If a child of proper age and qualifications is rejected by the master, the proper course is to appeal to the committee. 23 Pick. 224. *Sherman* v. *Charlestown*, 8 Cush. 160. A man finds butter, and by his neglect in keeping it, it putrifies: no action lies. A man finds

garments, and by negligent keeping they are moth-eaten: no action
lies. A man finds goods and loses them, or finds a horse and gives
him no sustenance: no action lies. There was no legal duty im-
posed on these persons to be careful: therefore no action lies. Bacon
Ab., 1 vol., Action on case C. One who gratuitously accepts the
office of a steward of a horse-race, is not responsible for a loss result-
ing to one who enters a horse for the race from his nonfeasance in
omitting to appoint a judge. *Balfe* v. *West*, 13 Com. B. 466. Case
will not lie against a steward, manager, or agent for damage done
by the negligence of those employed by him in the service of the prin-
cipal, but the principal, or those actually employed, are alone liable.
*Stone* v. *Cartwright*, 6 T. R. 411. No action lies where the plaintiff
had placed a note in the hands of an officer for collection, and the de-
fendant persuaded the officer not to collect and the debtor not to pay
the debt. *Platt* v. *Potts*, 13 Ired. 455. So a creditor cannot maintain
an action against a third person for aiding his debtor to remove, with
his property, out of the State. *Matthews* v. *Pass*, 19 Geo. 141. If a
third person represents the plaintiff's ferry not to be as good as an-
other rival ferry, and induces and persuades travellers to cross at the
other ferry, no action lies. *Johnson* v. *Hitchcock*, 15 Johns. 185. The
teacher of a town school is not liable to an action by a parent for refus-
ing to instruct his children. *Spear* v. *Cummings*, 23 Pick. 224; 8
Cush. 160. No action lies for false representations to a justice of the
peace, whereby he was induced to marry an infant, and was prosecuted
and fined therefor. *Harvey* v. *Bush*, 2 Pen. (N. J.) 975.

III. An act which does not amount to a legal injury, cannot be ac-
tionable because it is done with a bad intent. *Stevenson* v. *Newnham*,
13 Com. B. 285. The motive of a person so using his property as to
injure his neighbor is immaterial, if he uses it lawfully. *Auburn &c. Co.*
v. *Douglass*, 5 Seld. 444. Distraining for more rent than was due is
bad, though alleging it to have been done maliciously. 13 Com. B.
285. The maxim, *actus non facit reum nisi mens sit rea*, applies in an-
swering criminally but not civilly, where the intent is in general im-
material if the act were injurious to another. *Haycraft* v. *Breasy*,
2 East 104. The act of the defendant in making said report was
the occasion of damages to the plaintiff according to this count.
The intent with which it was done is immaterial, except perhaps to in-
crease the damages. The intent does not operate in this case to make
said act actionable. The question is whether what the defendant did,
making such a report as he did, is actionable. We have shown that it
comes within no principle laid down in the books. There was no priv-
ity of contract to make him liable either as a nonfeaser, misfeaser, or
malfeaser. The law imposed upon the defendant no duty to examine
scholars for admission, &c., and he could not be guilty of nonfeasance,
misfeasance, or malfeasance in the discharge of an official or legal
duty. When the act occasioning damages is in itself unlawful, with-
out any other extrinsic circumstance, the intent of the wrong-doer is
immaterial, in point of law, though it may enhance the damages. 1
Chitty Pl. 377. If the act were injurious to another, the intent is in

general immaterial, as hereinbefore stated. *Ibid*, 377. In actions against public officers, when they act judicially, the intent becomes material,—as in case against a moderator for refusing to receive the vote of a person legally entitled to vote, cited in 1 N. H. 88; but in ministerial officers, the intent is immaterial. So in slander, malicious prosecution, and assault, the intent is immaterial. *Keith* v. *Howard*, 24 Pick. 292. The act of this defendant, as complained of, does not amount to a legal injury; therefore, charging that it was done with malice does not make it actionable,—Hilliard on Torts, vol. 1, ch. 3, sec. 16; so distraining for more rent than was due, though alleging it to have been done maliciously. In the case cited in 23 Pick. 224, the motive with which it was done was set out, but no action lay. Take the case cited in Buller N. P. 73, where an action does not lie when the law lays no duty: how would the motive set out in the declaration aid the plaintiff in making it actionable? Take the case of the person finding garments, and so negligently conducting as that they became moth-eaten: would the motive, if set forth in the declaration, make the conduct of the defendant subject to an action? And so the case as to butter, or the finding of the horse. The defendant submits that the intent in the case at law does not make the act complained of actionable. The words "malicious, deceitful, and false" add nothing to make the act of the defendant actionable, but only go to the damages.

IV. The declaration, on the face of it, shows that the teacher rejected the plaintiff. It does not allege or set out in any way that the committee had reported in favor of the admission of the plaintiff, but places the whole responsibility of the plaintiff's rejection upon the teacher, when the law places it upon the committee. This is not the case where the plaintiff had the right to be admitted because the committee had reported in favor of the plaintiff, and the teacher undertook to set up his authority as against the committee. The declaration, then, shows that the teacher acted within the scope of his authority in rejecting the plaintiff, and the intendment of law is to the effect that the committee approbated the defendant.

*Geo. Y. Sawyer & Sawyer, Jr.*, with whom were *Barrett & Atherton* and *Morrison & Stanley*, for the plaintiff.

This case, as set forth in the declaration, does not proceed upon the ground that the defendant unlawfully refused to the plaintiff the privileges of the school, nor is it a case, as it is claimed to be in the defendant's brief, where the declaration places the responsibility of the plaintiff's rejection upon the teacher when the law places it upon the committee. Nor is it pretended on the part of the plaintiff, as is implied in the defendant's brief, either that the teacher or any other than the committee has the power to admit or reject, or that the teacher rejected *from the school* when the plaintiff had the right of admission, or that the committee can delegate the power or authority which, under the laws, is to be exercised by themselves, or that the duty to examine for admission was imposed by law upon the defendant, or that he was

guilty of negligence in the discharge of any public or official duty, or that any act of his which does not amount to a legal injury is actionable, or that any intent of his, however wicked, is at all material in a court of law, however it may be in the court of conscience, if only his acts are lawful. The various points, to which the counsel has cited such an array of authorities, have nothing to do with the case : it remains only to consider that very narrow portion of the defendant's brief, which does touch the case, to wit, that this declaration sets forth no cause of action because there is no privity of contract between the parties. Having seen what the case stated in the declaration is not, let us see what it is. Upon the declaration, the case is in substance this,—that the plaintiff being a scholar and the defendant a teacher in the high school in Nashua, the school committee proposed to make investigation of the qualifications of scholars to be retained as pupils therein, and established a rule or standard for determining whether they were or not so qualified, and employed the defendant to make examination of the scholars for the purpose of determining as to their qualifications according to that standard, and to report to the committee whether they were or not so qualified ; that the defendant voluntarily undertook to make and did make such examination, and found that the plaintiff *was* qualified according to said standard ; but with intent wrongfully to exclude the plaintiff from the school and to deprive him of the benefits thereof, to which, according to said standard, he was entitled, maliciously and falsely reported to the committee that he was not so qualified, and by reason of this malicious and false report the plaintiff was excluded from the school and lost its benefits. It is, of course, to be assumed that some proper mode of ascertaining the qualifications (unnecessary to be specifically set forth in the declaration, but to be proved on the trial) was adopted by the committee, and that the test proposed would be the correctly answering a certain proportion of a list of questions not previously made known to the pupils in the various branches of instruction, or some other fair mode of testing their merits, and that the defendant, by fraud in coming to the result in the plaintiff's case, and by falsehood in his report, deceived the committee. It is claimed that here is no cause of action set forth, and the code of ethics advanced by the defendant in the argument of his counsel in support of the position is, that it matters not what *modes of strategy* or what *artifices* may have been pursued by this defendant to influence the committee to admit or reject. The declaration proceeds substantially upon the ground that the defendant, having voluntarily assumed to inquire into and report upon the qualifications of the plaintiff, and he consenting, and voluntarily submitting to the examination, the defendant cheated in the result of the examination, and maliciously lied to the committee in his report. In the softer phraseology of the counsel, this is a mode of strategy and artifice by which the defendant had the right to influence the committee to reject, without subjecting himself to liability. We are quite aware that to make out a case against the defendant the matters alleged must substantially show that in the acts complained of he was violating a contract, express or im-

plied, or a duty imposed upon him by law. The rule thus enunciated in *Mayor of Albany* v. *Cunliff*, cited in the defendant's brief, has been so long and universally recognized as to have become elementary, and it is conceded that here was no duty imposed by law, and no express contract of the defendant of which the acts complained of are a violation. But it is clear that the law implies such contract. The defendant voluntarily assumed to make examination of the plaintiff's qualifications, and to report them to the committee. The law did not require it of him, nor was he under obligation as teacher, or in any other capacity, to assume the duty. The plaintiff, in like manner, in submitting to the examination, acted voluntarily, being under no obligation in law or by contract to attend the high school, to apply for admission to or retention in it, or to submit to examination for the purpose of admission. The case is as though the defendant said to the plaintiff, I will examine you as to your qualifications, and report upon them to the committee,—to which the plaintiff gave his assent. The case on this point is precisely like that of *Coggs* v. *Bernard*, 3 Ld. Raymond 163. The doctrine of that case is, that one voluntarily assuming to perform a work without reward, is liable for damage sustained through his neglect; and that case has been universally recognized as the basis upon which the law on this subject has rested for more than a century and a half. The case stands on the ground that the parties, the one undertaking and the other consenting to the work, are in such privity that the law implies a contract to perform the work with ordinary care, and that, though no compensation is to be paid under this implied contract, yet the defendant is to be held as though he had expressly contracted for a compensation to be paid to do the work with ordinary care and diligence. In this case there is the same privity between the parties, and the law implies a contract by the defendant that he will in good faith make the examination, and truthfully report to the committee. By the fraud and falsehood of the defendant the plaintiff was deprived of valuable rights; and it would be strange indeed if no cause of action existed for that fraud and falsehood which had thus deprived him of those rights.

*Sawyer & Stevens*, for the defendant, in reply.

I. This is an action of new impression, and it is not known that a similar one has ever been brought in this or any of the other States. It is certainly a consideration of great weight, that no such action has ever been maintained. *Anthony* v. *Slaid*, 11 Met. 290; *Lamb* v. *Stone*, 11 Pick. 527; *Carey* v. *Berkshire R. Co.*, 1 Cush. 478; *Spear* v. *Cummings*, 23 Pick. 225; *Costigan* v. *The Mohawk*, 2 Denio 609. The plaintiff attempts to bring this case within the principle of *Coggs* v. *Bernard*, 3 Ld. Ray. 163, but fails to do so. There it was a case where there was a *delivery* of property to the defendant: the *intrusting a person with property* is a consideration in itself for a promise that if he act upon the trust he will faithfully discharge it.

Here the defendant did not act in his profession, office, or calling,

which implies skill, and the use of ordinary care and diligence ; and being employed in such office, calling, or profession, implies a contract and a consideration. Here the defendant did not act in his *profession, office,* or *calling, gratuitously,* and while acting, did so negligently, not using ordinary care and diligence, in which case an action will lie ; be-'cause the defendant in such case, acting in his profession, office, or call-ing, implies skill, and acting gratuitously does not change his liability. Here the *defendant did act outside* of his calling, profession, or office, and the law imports to him no skill,—his work being gratuitously per-formed, and not in his profession, calling, or office ; he was under no obligation to exert all his skill to the best of his ability : and for such neglect no action lies. If a person is employed to transact any busi-ness, whose common *profession* and *business* it is *not,* the law implies no such general undertaking, but, in order to charge him with damages, a special agreement is required. 3 Black. Com. 164, ch. 9. An action will not lie for not doing a thing, where there is no such consid-eration as reward, &c., to uphold a promise to do it. Chitty on Con-tracts 38, title Consideration. Story's Com. Bailments, ch. 3, Mandates ; *Thorne* v. *Deas,* 4 Johns. 84 ; 2 Wash. 203 ; *McGee* v. *Burt,* 6 J. J. Marsh. 455 ; 11 H. 4, 33 ; *Elsee* v. *Gatward,* 5 T. R. 149. It is a fundamental principle of the common law, that a valuable considera-tion is necessary to support every parol contract ; and the importance of such a consideration is never lost sight of except in solemn instru-ments under seal. Story on Bailments 121, ch. 3, sec. 169. When the bailee in the transaction of business is not acting within the scope of his ordinary occupation, if it is sought to charge him with neglect, it must be shown that the bailee was to receive a compensation. *Dart* v. *Lowe,* 5 Ind. 131.

II. In the case at bar :

1. There was no express contract between the plaintiff and the de-fendant. 2. The defendant was not employed in his office, calling, or profession, to do what was alleged. 3. The defendant did not act *gratuitously* in his calling, office, or profession. 4. The defendant did what he did as a *mere volunteer, not* in his *calling, profession,* or *office,* and no skill is to be imputed to him, from which he was bound to do more than he did do : no action could be brought against him acting *outside* of his calling, profession, or office, for want of an express contract. The court will please observe that *Coggs* v. *Bernard* is not an author-ity, in case a man is merely dealing with an incorporeal right gratui-tously. There is no intimation in Cogg's case, that if property had not been delivered to him, entrusted to him, a consideration could have been implied from his voluntary acts of labor—but in the motion in arrest of judgment, because it was not alleged that the defendant, in his business, calling, or profession (common porter), did it, and it was not averred that he had anything for his pains—and no consideration to ground the promise upon, and was *nudom pactum,* all the court put the consideration to oblige the defendant to a careful management, to the plaintiff's trusting the goods to him. If a person will knowingly employ a common mat-maker to weave or embroider a fine carpet, he

must impute the bad workmanship to his own folly. Jones's Bailm. 100. So, if a man having disorder in his eyes should employ a farrier to cure the disease, and he should lose his sight by using the remedies prescribed, he would certainly have no legal ground of complaint. Jones's Bailm. 100. There is and could be no privity of contract implied, between the plaintiff and the defendant, in reference to any examination or report of the defendant relating to the qualification of the plaintiff to be admitted or rejected from a school, because the law regulates the manner as to how a pupil shall or may enter a particular school. Because the law does not regulate or prescribe that a pupil can, by the certificate or report of an unofficial citizen, be admitted, there can be no privity of contract implied. If the law were that, upon a favorable report of any citizen of a school district in favor of a pupil, that pupil, upon such report, might be admitted, and the defendant were applied to, and he undertook and then so negligently conducted, not using ordinary care, diligence, &c., the fact that the law contemplated that any pupil could be so examined might raise an implied promise; but not in this case, because no such provision of law exists. The only mode of obtaining admission to a school is through the committee. The undertaking on the part of the defendant in this case could not impose upon him any duty whatever, because what he did or could do in no event could admit the pupil. In other language, where the acquisition or the enjoyment of an incorporeal right depends upon an official act alone, the agreement or undertaking by a private person to obtain it by the performance or the execution of the duties imposed by law upon an officer selected for that purpose, cannot be held to furnish a good and valid consideration for a contract, either expressed or implied : it would be *contra bonos mores.*

III. Such actions should be discouraged by the court on the ground of inconvenience. If one pupil can bring such an action, then all who are rejected can. If any injustice has been done in an examination or report of a stranger, an appeal to the committee will furnish ample remedy. 23 Pick. 226.

FOSTER, J. The substance of the plaintiff's declaration is, that the school committee employed the defendant to examine candidates for admission to the high school, and to report upon their qualifications ; that the defendant voluntarily undertook to make such examination ; that he examined the plaintiff, and found him to possess the requisite qualifications ; but, with intent wrongfully to exclude the plaintiff from the school and to deprive him of its benefits, maliciously and falsely reported to the committee that he was not qualified ; and, by reason of this malicious and false representation, the plaintiff was excluded from the school and lost its benefits.

The declaration, therefore, charges upon the defendant a wilful and positive deceit and· fraud ; and the suit is placed upon the general ground that, where one party sustains an injury by the malfeasance of another, the sufferer may maintain an action against the wrong-doer for redress.

The defendant contends that, upon this declaration, no suit can be maintained; because, assuming the allegations to be true, there is no contract, express or implied, between these parties; and without privity of contract there can be no liability.

It is true that there was no express contract between the parties, and that the defendant acted in the performance of no public duty nor of any obligation to the plaintiff. It is also true that the plaintiff was under no obligation to submit himself to the defendant for examination.

But the plaintiff contends that, notwithstanding the acts of both parties were voluntary, still, the undertaking of the defendant to examine the plaintiff, and the plaintiff's submission of himself to that examination, created and established between them a contract, by implication of law; and that, such being the case, the defendant was under obligation, notwithstanding his work was gratuitous, to perform his undertaking with ordinary care and diligence—to make examination of the plaintiff in good faith, and truthfully to report the result to the committee.

It may be doubted whether these considerations necessarily enter into the present inquiry. The case does not rest upon a charge of negligence nor of misfeasance at all; nor even of malfeasance in the performance of any duty imposed by law or required by the terms of a contract; but the declaration charges a positive and wilful false representation, deceit, and fraud, whereby the plaintiff received damage. It is of the character of a declaration in slander, and would seem to be governed by the principles applicable to such a case.

And although it may be said that the voluntary relationship which the parties assumed placed them in privity of contract, so that for negligence in the performance of the defendant's undertaking, a fortiori, for fraud concerning it, he would be liable, in damages, in this action, still, it may be seriously questioned whether the alleged fraud and deceit, though perhaps connected with contract, by implication of law, is necessarily affected by, or at all dependent upon, the existence of such contract.

What difference does it make whether the defendant, in the perpetration of a malicious fraud and falsehood, such as the demurrer admits, violated an express or an implied contract, or any duty resulting from his relation either to the plaintiff or to the school committee; or, whether, as a mere stranger, in law, he achieved the wrong and caused the damage? Does not the general and simple rule apply, that, where a party sustains an injury by the wilful wrong of another, the sufferer may have his action against the wrong-doer? See *Mayor of Albany* v. *Cunliff*, 2 Comst. 180; *Pasley* v. *Freeman*, 3 Term 51; S. C. 2 Smith's L. C. 137, 138; *Willink* v. *Vanderver*, 1 Barb. 599; *Watson* v. *Poulson*, 7 Eng. L. & Eq. 585; *Salem Bank* v. *Gloucester Bank*, 17 Mass. 1.

But without placing the decision of the questions before us upon these grounds, we have no difficulty nor hesitation in disposing of them by the application of the principles so well settled in *Coggs* v. *Bernard*, 2 Ld. Raym. 909—1 Smith's L. C. *82.

As all lawyers know, it was there held that " if a man undertakes

to carry goods safely and securely, he is responsible for any damage they may sustain in the carriage through his neglect, though he was not a common carrier, and was to have nothing for the carriage."

The analogy is obvious, and the 'principle evolved, and by the application of which this case is to be determined, is, that,—The confidence induced by undertaking any service for another is a sufficient legal consideration to create a duty in the performance of it. Notes to 1 Smith L. C. 254; *Wilkinson* v. *Coverdale,* 1 Esp. N. P. Rep. 74; *Doorman* v. *Jenkins,* 2 Ad. & E. 256; 1 Pars. Con. (5th ed.) 447, and note *w.*

By this rule, a gratuitous and voluntary agent, who has no public or official duty to perform, but who, nevertheless, undertakes gratuitously to do a particular service requiring the trust and confidence of another, though the degree of his responsibility is greatly inferior to that of a hired agent, is yet bound not to be guilty of gross negligence.

Prof. Parsons expresses the rule in more broad and general terms, thus : " If a person makes a gratuitous promise, and then enters upon the performance of it, he is held to a full execution of all he has undertaken."

It is unnecessary to indorse so general a proposition without qualification or limitation; but it is sufficient to hold that if a voluntary agent, without compensation, is accountable for the consequences of his gross negligence, much more should he be held answerable for wilful and malicious fraud and wrong in connection with his assumed undertaking.

Questions involving the principle under consideration seldom arise except in the case of bailments, but the principle is broad enough to include the subject of the present inquiry.

*The demurrer is overruled.*