[No. 2,162.]

## JACOB C. HINCKLEY v. LUCIUS C. FOWLER.

GOOD DESCRIPTION IN APPLICATION TO PURCHASE TIDE LAND.—F. filed an application under the Act to provide for the sale of certain lands belonging to the State (Stats. 1863, p. 591), in which he described the land for which he applied as "the one half mile water front donated to the San Francisco and Marysville Railroad Company, by an Act of the Legislature of the State of California, approved April 24th, 1858." *Held*, that the description was in every respect in accordance with law.

DESCRIPTION OF TIDE LANDS IN APPLICATION TO PURCHASE.—The Act of 1863, supra, only requires the applicant to describe the land applied for, and a description which the County Surveyor can understand is sufficient. The survey, which it is his duty to make, ought to fix the lines with the requisite precision.

APPLICATION TO BUY TIDE LAND CONFERS A RIGHT TO BE LOST ONLY BY THE FAULT OF THE APPLICANT.—An application to buy tide land, made in accordance with law, confers a right to purchase upon the applicant

which, as against the State and all subsequent applicants, can be lost only by the failure of the applicant to pursue the further steps prescribed by the statute—not through the fault of any officer.

RIGHT OF APPLICANT WHERE LESS THAN THE TRACT APPLIED FOR IS APPROVED.—Where a party makes an application in accordance with the Act of 1863, to purchase a certain piece of tide land, but the County Surveyor actually surveys but a small portion of it, and such survey is approved by the Surveyor General, and subsequently, under the advice of the Surveyor, the applicant makes a payment upon the tract approved, and then files a new application for the balance of the tract, he is not precluded from insisting upon his rights under the first application.

CONTEST, HOW ADJUDICATED.—Under the twenty-seventh section of the Act of 1863, for sale of tide land, when a contest is referred to the Courts for settlement, it is to be determined upon the principles of law and equity involved. The Court is to exercise its judicial authority in adjudicating the entire case as presented, and is not confined to the measure of relief which the Surveyor General might award.

SURVEYOR GENERAL TO DETERMINE FACTS ONLY.—The Surveyor General is to determine only those contests about the purchase of lands in which the survey, " or purely a question of fact," is involved.

QUESTION OF LAW TO BE REFERRED TO THE COURTS.—When a question of law only is involved, or one of law and fact, in relation to purchase of tide lands, the parties are to be referred to the Courts for the settlement of such questions.

RULES AS TO PLEADINGS AND EVIDENCE IN CONTESTED CASES.—The ordinary rules of pleadings and of evidence are to be observed, and judgment is to be rendered as in ordinary adversary proceedings.

APPEAL from the District Court of the Seventh Judicial District, County of Solano.

The defendant had judgment, and the plaintiff appealed. The other facts are stated in the opinion.

*Williams & Thornton,* for Appellant.

We contend that the respondent has affirmed the decision on the first application by his conduct. He might have abandoned it, but he has chosen to affirm it; and it is only reason and justice that a man who elects to affirm, when he might avoid, cannot retract his choice to the injury of others. (*Marsh* v. *Pier,* 4 Rawle, 273, 286; see, also, ante,

209; *Hayes* v. *Gudykunst,* 1 Jones, 220; *Varick* v. *Edwards,* 11 Paige, 289; *Regina* v. *Sandwich,* 10 Q. B. 563, 571; *Ogden* v. *Rowley,* 15 Indiana, 56; *Brankley* v. *Kee,* 5 Jones Eq. 332; *Carlisle* v. *Foster,* 10 Ohio, [N. S.] 198; *Martin* v. *Ives,* 17 S. & R. 564; *Wells* v. *Kane,* 2 Grant, 60; *Scraggs* v. *B. & W. R. R. Co.* 10 Md. 268; *The Bank, etc.* v. *Ammon,* 3 Casey, 172; *Philadelphia and Wilmington R. R. Co.* v. *Howard,* 13 How. 307; *Bailey* v. *Bailey,* 8 Wright, 247; 2 Smith's Lead. Cases, 6 Amer. edit. 818.)

The Surveyor General performs, in his approval of survey, judicial or quasi-judicial duties; and when he had performed such duties his power was exhausted. (*People* v. *Supervisors of Schenectady,* 35 Barb. 415; *Jermaine* v. *Waggoner,* 1 Hill, 279; *Woolsey* v. *Tompkins,* 23 Wend. 324; *Martin* v. *Mayor of New York,* 20 How. Pr. 86; *Matter of Beekman Street,* 20 Johns. 271; *People* v. *Ames,* 19 How. Pr. 551; *Ayrault* v. *Sackett,* 17 id. 508; *Supervisors of Onondaga* v. *Briggs,* 2 Denio, 26; *Supervisors of Chenango* v. *Birdsall,* 4 Wend. 460.) According to the principles settled in the above cases, the Surveyor General cannot alter his decision approving the survey and location of Fowler to the five and fifty-seven one hundredths-acre tract. He cannot review, reverse, or vacate his own judicial action. It concludes him, and every one else, and is an end of the matter. (*Lott* v. *Prudhomme,* 3 Rob. La. 296; *Bours* v. *Zachariah,* 11 Cal. 292.)

. This Court cannot go behind his action on the first application of Fowler. The judgment of approval is within the jurisdiction of this officer, from which there is no appeal. His action binds the Court. (*West* v. *Cochran,* 17 How. 403; *Stanford* v. *Taylor,* 18 id. 409; *Cooper* v. *Roberts,* 18 id. 173; *Guires* v. *Nicholson,* 9 id. 356; *Russell* v. *St. Louis Public Schools,* 18 id. 19; *Les Bois* v. *Bramell,* 4 id. 449; *Bryan* v. *Forsyth,* 19 id. 334; *Ballance* v. *Papin,* 19 id. 343; *United*

*States* v. *Ferreira*, 13 How. 40; *Cassidy* v. *Conway*, 25 Pa. 243.)

Further, the application made by Fowler, on the 13th December, 1866, admitting that he filed the original with the County Surveyor, is a nullity in the eye of the law, because it describes no land. The third section of the Act under which the grant is sought to be obtained requires the application to describe the land. The description here is by reference to a certain Act of the Legislature.

*C. Harston*, *W. S. Wells*, and *Geo. Cadwalader*, for Respondent.

Fowler acquired a vested right to all the tide lands described in his application and oath on the 13th day of December, 1866. (Section 29 of Tide Land Act of April 27th, 1863; *Armour* v. *Alexander*, 10 Page Ch. 571–573; *Lick* v. *Stackpole*, 18 Cal. 223; *Page* v. *Hobbs*, 27 Cal. 488; *Ketchum* v. *Dunn*, 38 Cal. 93; *Megerle* v. *Ashe*, 33 Cal. 85; C. A. a [N. S.], 58, 60, 4 Dana, 96; *The People* v. *James Cook*, 14 Barb. 252.) By no subsequent act or omission has he abandoned or forfeited any portion of the lands so acquired. Abandonment is matter of intention. (*Davis* v. *Perley*, 30 Cal. 636; *St. John* v. *Kidd*, 26 Cal. 272; *Keane* v. *Cannovan*, 21 Cal. 293; *Richardson* v. *McNulty*, 24 Cal. 389; *Armour* v. *Alexander*, 10 Paige Ch. 574; *Moon* v. *Rollins*, 36 Cal. 333.)

The misconduct or neglect of the County Surveyor, a public officer, will not deprive defendant of his rights. (*Lyttle* v. *State of Arkansas*, 9 How. U. S. 333; *Himmelmann* v. *Cofran*, 36 Cal. 413.)

The exercise of power by the Surveyor General is ministerial and may be reviewed and set aside by himself. (*United States* v. *Hughes*, 11 Howard, 552; Opinions of Attorneys Gen. Vol. I, 158, 699; Opinions of Attorneys Gen. Vol. III, 263; *Dorwall* v. *Delanso*, 20 How. 29; Opinions of

Attorneys Gen. Vol. II, 41.) However the doctrine *functus officio* may affect the particular survey, it cannot affect the application. In case there is an erroneous and fraudulent survey, both the power and duty to make a lawful and correct one remains. (*Himmelmann* v. *Cofran*, 36 Cal. 413; *Pond* v. *Negus*, 3 Mass. 213; *Libly* v. *Burnohm*, 15 Mass. 148; *Bangor* v. *Laney*, 21 Maine, 473; *Middleton* v. *Low*, 30 Cal. 601, 609; *P. Tool Company* v. *Prader*, 32 Cal. 635; Section 27 of Act of 1863, vesting final right of trial in Courts.) The State selects her officers to make the surveys, and she guarantees the honesty and fairness of their acts.

By the Court, Wallace, J.:

The controversy in this case is a contest arising under the provisions of the twenty-seventh section of "An Act to provide for the sale of certain lands belonging to the State." (Acts 1863, p. 591.)

It appears that in December, 1866, Fowler presented to the County Surveyor of Solano County an application for certain tide lands in that county, which were described as "the one half mile water front donated to the San Francisco and Marysville Railroad Company by an Act of the Legislature of the State of California, approved April 24th, 1858." Upon receiving this application, the Surveyor noted the same in his book of applications thus: "L. C. Fowler, Solano County: No. 8. Township 3 north, Ranges 3 and 4 west, Sections 19 and 24; fractions in east half of 24; fractions in west half of 19; Mount Diablo meridian." A copy of the description, as thus noted, was indorsed upon the affidavit of Fowler, pursuant to Sections 28 and 29, and filed, along with the affidavit itself, in the office of the Surveyor of the county. It is claimed, however, by the appellant, Hinckley, that the paper thus filed in the Surveyor's office was a *certified copy* of the affidavit of Fowler, and not the

original; but an examination of the evidence shows it to be substantially conflicting upon this point, and the finding of the Court below, that the original, and not the copy, was filed in the office of the Surveyor, will, therefore, not be disturbed here. The land described in the application, and of which note was thus made in the application book of the County Surveyor, embraced some sixty-five acres, and it was the duty of that officer within thirty days thereafter to make the survey and transmit a duplicate of it, and of the plat and field notes, and a copy of the application and affidavits in its support, to the Surveyor General for approval. In March, 1867, Fowler discovered that the County Surveyor, instead of surveying the land embraced in his application, had surveyed only a long narrow strip of it, which was of less than six acres in superficial area, and had returned that survey to the Surveyor General, who had approved the survey as thus made. Upon discovering this fact, Fowler complained to the County Surveyor, and called his attention to the omission, but that officer declined to correct it, or to take any further steps in relation to it, on the ground that his authority over the subject was at an end. He, however, on the 18th day of March, 1867, advised Fowler to make a new application for the land omitted from the survey, and this new application was accordingly made upon the first day of April following, and a new survey was made thereunder and transmitted to the Surveyor General, including the narrow strip shown by the first survey, and some fifty-eight acres besides. On the 13th day of March, 1867, however, the appellant, Hinckley, made an application to the same County Surveyor, in the usual form, for certain tide lands, including the lands which had been omitted from the Fowler survey on the first application; this application of Hinckley was entertained by the Surveyor, who, on the 15th day of March, completed the survey for Hinckley thereunder, and on the next day transmitted a duplicate of it, with plat, field notes,

affidavits, etc., to the Surveyor General, by whom they were received on the 19th March.

Subsequently the County Surveyor transmitted to the Surveyor General the new survey he had made for Fowler, under his second application of April, 1867, along with a copy of the plat, field notes, etc., accompanied by a notice to the Surveyor General that some fifty-nine acres included therein had been also embraced in the survey for Hinckley already transmitted. Fowler afterwards filed a protest in the office of the Surveyor General against the approval of the Hinckley survey, on the ground that under his original application he was himself entitled to purchase the whole of the land included in that survey; and the contest thus made up was thereupon referred to the Courts for decision.

1. There is no doubt that the application of Fowler, made in due form on the 13th day of December, 1866, to purchase these lands, was in every respect in accordance with law.

Its validity is assailed upon the ground that a copy of the application, and not the original, was filed by Fowler in the office of the County Surveyor; but that objection has been disposed of already.

2. It is said that the first application of Fowler describes no lands whatever, and is, therefore, a nullity. We have seen already that it was an application for the water front, which had been donated to the railroad company by the Act of April 24th, 1858. A more exact description could hardly have been given, for the tract itself had been already accurately surveyed and platted by the railroad company, under the provisions of the Act; and the survey and plat so made constituted a record at the time of Fowler's first application existing in the office of the County Recorder of Solano County. That it was a description well understood in the office of the County Surveyor is evident, for he proceeded to act upon it without' objection or hesitation. The Act of 1863 only requires the applicant to *describe the land*

*applied for*—and a description which the Surveyor can understand is description enough; the survey which it is his duty to make ought to fix the lines with the requisite precision.

3. The application of Fowler, thus made in accordance with law, gave him, as against the State, and, so long as the statute remained in force, a privilege to purchase the land he applied for.˙ As against the officers of the State, and all applicants for the same land subsequent in point of time, it conferred upon him a *right* to purchase, which could only be lost by his own failure to pursue the further steps which the statute had prescribed. The malfeasance or misfeasance of any of the officers could not deprive him of the benefit of his application, nor operate to postpone him to the claim of a subsequent applicant.

4. It is argued, however, that Fowler is concluded to claim the larger tract, because he knowingly accepted, as it is said, the first survey of five acres and a little more. The facts are, that upon discovering that instead of the sixty-five acres, for which he had applied, only some five acres and a little upwards had been surveyed, Fowler applied to the County Surveyor to correct the survey, and the latter declined the request, on the ground that he had done all the law required him to do, and, in connection with this refusal, the County Surveyor advised Fowler to begin *de novo*—and that, in his opinion, nothing else could be done. Subsequently, and in May, 1868, he paid to the County Treasurer a portion of the principal and interest upon the five-acre location. He testified that this was done because he had learned that the County Surveyor was advising other parties to enter upon the five-acre tract in default of the payment of this money to the County Treasurer. I see nothing, however, in this which would preclude Fowler from insisting upon his rights under the first application. It was only a very natural endeavor to avoid the possible loss of all that he had so far been able to

obtain. It was the best that he could do under the circumstances. At that time his new application, made under the advice of the County Surveyor, was already pending and undetermined.

5. It is next insisted that the Surveyor General having approved the first application of Fowler to the extent of five acres and upwards only, it results that the contest here is confined to the application of Hinckley made in March, and the last application of Fowler made in April, 1867, and that Hinckley's, being the prior of these two, should be held to be superior to Fowler's. There is nothing in this point. Under the twenty-seventh section of the Act, when a contest is referred to the Courts for settlement, it is to be determined upon the principles of law and equity involved. The Court is to exercise its judicial authority in adjudicating the entire case as presented. It is not confined to the narrower measure of relief which the Surveyor General, in the exercise of mere quasi-judicial functions, in determining mere matters of fact, might award. Such was not the intent of the statute. Its purpose was to provide for the settlement of the rights of the parties litigant, at once and forever. The jurisdiction of the Court is as broad and effective as though one of the parties had already obtained a title to which the other had the better right. The Surveyor General is to determine only those contests in which the survey, " or purely a question of fact," is involved. But when a question of law only is involved, or one of law and fact, the parties are to be referred to the Courts for its determination, and in the Courts the ordinary rules of pleading and of evidence are to be observed, and judgment is to be rendered as in ordinary adversary proceedings.

Other, but minor, points are made which it is not necessary to notice in detail.

It is clear that Fowler by force of his application of December 13th, 1866, became entitled to purchase the land in

controversy—that nothing since then has occurred to postpone him to the subsequent application of Hinckley—the circumstances of the case presented are indeed such that had the latter even succeeded in obtaining the certificate, he must have been compelled by the decree of a Court of equity to surrender it to Fowler. These circumstances are those which characterize the conduct of the County Surveyor concerning the first application of Fowler made December, 1866, and the evident concert between that officer and Hinckley, the subsequent applicant, and to which it is not necessary, in view of the conclusion reached upon other grounds, to advert in detail.

The judgment must be affirmed, and it is so ordered.