NORTHERN PAC. R. Co. *v.* KINDRED and another.

SAME *v.* SAME and others.

NORTHERN PAC. R. Co. *v.* POWER and others.

SAME *v.* POWER.

*(Circuit Court, D. Minnesota.* October, 1881.)

1. EQUITY—LACHES—RESCISSION OF FRAUDULENT CONTRACT.

Equity will not presume a ratification of a fraudulent contract by the injured party; no particular form of rescission is required, and if he files his bill to set it aside with reasonable promptness he will be entitled to relief.

2. PRINCIPAL AND AGENT—PROFITS OF AGENCY BELONG TO PRINCIPAL.

Where an agent has fraudulently made profits out of his agency at the expense of his principal, he shall account to his principal for all such profits, and shall be allowed only the actual value of whatever he turns over to his principal; and if it be property purchased in the course of his agency, what he paid for it shall be considered its value.

3. SAME—PLEADING—NECESSARY PARTIES.

In a suit to compel an agent who has fraudulently conspired with others to obtain title to the lands of his principal, to account therefor, and to have the sales of said lands set aside, the only necessary parties are the persons who have some *present* interest in the controversy, and against whom the complainant has a right to a decree for relief. Those used as the instruments of the fraud, who in pursuance of the conspiracy conveyed to others the title once vested in them, are not necessary parties.

4. SAME—CHARGING CONSPIRACY.

Where the conspiracy charged is *one*, though embracing within its scope many transactions, one suit is sufficient.

5. SAME—OTHER FRAUDS.

Allegations of other frauds that cannot be specified because of their concealment by defendants, are sufficiently certain and not demurrable.

*Gilman & Clough,* for plaintiff.

*C. K. Davis,* for defendants.

McCRARY, C. J. These cases are before us on demurrers to the bills. We will consider the several questions discussed by counsel in the order in which they have been stated in the argument.

1. It is insisted that it appears by the bills that complainant has been guilty of laches in the premises, and has for so long a time acquiesced in the contracts, acts, doings, and omissions complained of, with full knowledge thereof, as to bar it from the relief prayed. To support this proposition the counsel for respondents invokes the doctrine that where a contract is obtained by fraud, and the party defrauded desires to rescind on that ground, he must, upon the discovery of the fraud, at once announce his purpose and adhere to it. *Grymes* v. *Sanders*, 93 U. S. 62, and cases there cited. We are of opinion that these are bills brought to set aside certain alleged fraudulent contracts entered into by complainant in ignorance of the fraud, and that it would, therefore, be a good defense to show that the complainant, after knowledge of the fraud, acquiesced in the contracts, or that it failed, upon being advised of the facts constituting the fraud, to repudiate them. Counsel for complainant insists that this is a matter of defense, and must be pleaded and established by the respondents; that it was not necessary by averments in the bill to anticipate such defense. Whether this position of the complainant's counsel is correct or not need not now be determined, because in three of the cases the bills contain the allegation that the fraud had been very recently discovered, and in the remaining case counsel say that a similar allegation was omitted by a clerical error, it being their purpose, out of abundance of caution, to insert the averment in all the cases. It may, therefore, be now inserted in the one case in which it is omitted. But it is further insisted that the bills are bad on their face because they do not aver that complainant at once, upon discovering the fraud, repudiated and rescinded the fraudulent contracts. In one case the allegation is that the fraudulent acts were not discovered "until within a few weeks last past;" in another, that the complainant had no knowledge of the fraud "until within a few days last past;" and in a third, the discovery is averred to have been made "within the three months last past."

We hold that these averments do not upon their face affirmatively show that complainant has been guilty of laches, nor that it has done anything to condone the frauds complained of, or to ratify the contract alleged to be fraudulent. It is true, however, that, even within the short period here named, the complainant may have acquiesced in the contracts, and by its acts may have confirmed them.

If this is so it must be pleaded as a defense and established by proof. Equity will not presume a ratification of a fraudulent contract by the injured party, if he files his bill to set it aside with reasonable promptness. No particular form of rescission is required. It need not be in writing. It is enough if from the time of discovery of the fraud the party injured abstains from any acts recognizing the fraudulent contract, and that within a reasonable time he brings suit or takes some other active measures to set it aside. A different rule as to pleading prevails where the bill shows upon its face that it is barred by the statute of limitations. In such a case the bill is demurrable, and if it be a bill for relief on the ground of fraud, filed after the time limited by law or the principles of equity for the filing of such bills, it must be alleged that the fraud was not discovered until within that period. *Moore* v. *Green*, 19 How. 69.

2. It is insisted that the bills are fatally defective for that the complainant has not tendered, and does not offer to restore, the property which it received in exchange for the land sold, and insists upon its right to retain the same and pay to respondents only its just cost to them. The averment in the several bills is, in substance, that respondents Power and Kindred were employed by complainant as its agents respecting the care, management, and sale of certain lands of the complainant; that as such agents the duties of said respondents were, among other things, to negotiate sales of complainant's lands, and in complainant's name and behalf to enter into written contracts for such sale, to be made only to *bona fide* purchasers, and at fair prices, and to collect and pay over to complainant the proceeds of sales, whether in money or in preferred stock of complainant; and in general to look after and promote the interest of complainant in all things concerning the care, management, valuation, and sale of complainant's said lands. The preferred stock here referred to is alleged to have been the preferred stock of complainant which was outstanding, and the shares of which were receivable upon certain terms in payment for lands sold at its par value. An examination of the several bills will show that, if they are true, the respondents Power and Kindred, while acting as such agents for complainant to make sales of its lands, undertook to purchase for their own use and benefit large quantities of the most valuable of the lands by having them conveyed to third parties who were to hold or convey for them, and by obtaining complainant's preferred stock in the market and delivering it to complainant in payment for such lands, representing it as the stock paid in by the persons named by them as purchasers. In such a

case the defrauded principal, when he is advised of the conspiracy and fraud, and repudiates the contracts made in pursuance thereof, is not bound to return to the dishonest agent anything beyond what has been received from him on account of the fraudulent transactions.

An agent will not be permitted to make any profit out of transactions connected with his agency, and if he be an agent to sell property he must not be allowed to purchase it. These doctrines are elementary. *Michoud* v. *Girod*, 4 How. 503; *Devoue* v. *Fanning*, 2 Johns. Ch. 252; *Moore* v. *Moore*, 5 N. Y. 262; *Gardner* v. *Ogden*, 22 N. Y. 347; *Conkey* v. *Bond*, 36 N. Y. 427; *Cook* v. *Woolen Mill Co*. 43 Wis. 433; Story, Ag. §§ 210, 211; Kerr, Fraud & M. 174, 175, and cases cited.

If an agent shall make any profits in the course of his agency by any concealed arrangement, either in buying or selling, or other transactions on account of the principal, such profits will belong exclusively to the latter. Bigelow, Frauds, § 214. In the light of this doctrine we must construe and apply the rule upon which the counsel for the respondent relies. That rule may be thus stated: A party to a contract who seeks to rescind it for fraud must, upon discovery of fraud, offer to return whatever he has received upon the contract. *Farmers' Bank* v. *Groves*, 12 How. 57; Perry, Trusts, § 195. This rule, no doubt, applies here; but under it, in the light of the other doctrine above stated, what must complainant return to respondents? Clearly nothing; that is, in the nature of profits made in or growing out of the fraudulent transactions, for these were in equity the property of the complainant from the moment they came into the hands of its agents. The stock, therefore, which the complainant received on account of the transactions in controversy was the consideration, and the only consideration, which complainant received for the contracts now sought to be set aside; and that, or what respondents paid for it, is all that complainant is bound to account to respondents for upon settlement, if the allegations of the bill are established. Where such an accounting is prayed, and it is averred that the sum due from the agent to the principal is larger than that received from the agent on the contract, it is not necessary that the principal, upon filing his bill, should actually pay back the money or property received on the contract; it is enough if he offers to credit it to the agent on settlement. In this view of the law the allegations now under consideration are deemed sufficient.

The bills pray for an accounting for the proceeds of any lands acquired by the respondents in the manner set forth, and afterwards

sold by them, after deducting from said proceeds the actual cost of the preferred stock turned over to the complainant. This we conceive to be the correct basis for an accounting in such cases as are set forth in these bills. It may be that the stock is now worth more than at the time it was purchased by defendants and delivered to complainant. If so, to require complainant to return the identical stock, or its present market value, would be to pay to the respondents a profit to which, if the bills are true, they are not entitled. I know of no rule applicable to cases of this character which can be reduced to practice consistently with the principles of equity, except the following: Where an agent has fraudulently made profits out of his agency at the expense of his principal, he shall account to his principal for all of such profits, and shall be allowed only the actual value of whatever he turns over to his principal; and if it be property purchased in the course of his agency, what he paid for it shall be considered its value. He shall gain nothing by his frauds, and should consider himself fortunate, and the law very merciful, that he is allowed to escape actual loss.

3. It is insisted that in some of the cases the bills show a want of necessary parties, because the persons in whose names the respondents made purchases, and who afterwards conveyed as directed by respondents Power and Kindred, are not made parties. This point is not well taken. The only necessary parties are the persons who have some present interest in the controversy, and against whom the complainant has a right to decree for relief. The persons who are alleged to have been used as the instruments of the fraud, and who have, in pursuance of the conspiracy, conveyed to others the title which was once vested in them, are not necessary parties.

4. It is said that some of the bills are multifarious, because each particular transaction charged is several in character,—distinct from all the others,—and should be the subject-matter of a separate suit. The charge is a fraudulent combination and conspiracy entered into for the purpose of defrauding the complainant by obtaining its lands for less than their value, and through the fraud of its agents. The conspiracy is charged as one conspiracy, embracing within its scope numerous transactions. If such be the fact one suit is sufficient. Story, Eq. Pl. §§ 285, 285a, 286, 286a.

5. Has the complainant a remedy in equity against Power alone upon the facts stated in the bill against him? We think so. It is clearly a bill to set aside a fraudulent contract, and for discovery and an

accounting. We have already held that the offer to return the stock or the sum paid for it by the respondents is sufficient; and this disposes of the only ground upon which this objection is urged.

6. We think the bills contain a sufficient allegation of title in complainant to the lands described therein. It is averred that prior to the employment of Power and Kindred as its agents the complainant had acquired said lands under the acts of congress mentioned, and by reason of the construction of portions of said line of railroad. This is sufficient.

7. Respondents object to certain general allegations of fraud in two of the bills. These, in substance, charge that the defendants Power and Kindred have been guilty of practices like those specifically set forth in respect to numerous tracts of land of the complainant other than those set forth; but as to the number of instances in which they have been guilty of such practices, and as to the description of the tracts and the details of such transactions, the complainant is ignorant, for the reason that respondents have concealed the same from complainant, and the complainant has not been able to discover the same. Allegations of this character are not demurrable. They show upon their face a sufficient reason for not being more specific, in that they aver concealment by the respondent. The facts, when discovered, may be set out by way of amendment. This allegation may stand, if for no other purpose, as a foundation for an amendment of the bill hereafter if further facts are discovered. It is, however, probably true that no decree could be based upon this general allegation as it stands.

We are of opinion that, upon the amendments of the bill in the case first named so as to aver recent discovery of the facts constituting the alleged fraud, the demurrers should be overruled. So ordered.

Nelson, D. J., concurs.