Argued 12 October, decided 31 October, 1904; rehearing denied 15 May, 1905.

### KROLL v. COACH.

[78 Pac. 397, 80 Pac. 900.]

EFFECT OF EVIDENCE OF JOINT PURCHASE.

1. Evidence in a suit to have defendant declared a trustee for plaintiffs to the extent of a certain interest in land held sufficient to sustain a finding that plaintiffs were joint purchasers with defendant, under an option obtained by him, of said land, and not purchasers directly from him of an interest therein.

EFFECT OF FRAUD BY A JOINT PURCHASER ON THE OTHERS.

2. A person having exclusive information relative to a proposed purchase, offering others an opportunity to take an interest and share the anticipated advantages on equal terms with him, is bound to act with entire truthfulness and good faith toward them in the matter, and if he derives a personal gain by deceiving them he is accountable as a trustee *ex maleficio.*

EQUITY JURISDICTION — PROCEEDS OF TRUST FUNDS.

3. Where the holder of an option of purchase induces others to join with him on a representation that for specified proportions of the price they shall have corresponding interests in the property, but fraudulently misstates the price so that the other purchasers are deceived and do not really get the proportions that they paid for, the difference going to the optioner, such purchasers may either sue for damages at law or have an equitable decree for the conveyance of the interest that they really bought.

TRUST EX MALEFICIO — STATUTE OF FRAUDS.

4. The enforcement of a trust arising *ex maleficio* is not dependent upon a memorandum, nor is it at all affected by the statute of frauds.

WRITINGS NOT CONCLUSIVE BETWEEN PARTIES IN CASES OF FRAUD.

5. In a suit to compel restitution of property fraudulently withheld by an agent or trustee, a deed between the parties is not conclusive, it being part of the scheme by which the principal was deceived.

From Douglas: James W. Hamilton, Judge.

Suit by William Kroll and another against William Coach in which there was a decree for plaintiffs. Defendant appeals.    Affirmed.

For appellant there was an oral argument by *Mr. Edward B. Watson* and *Mr. Andrew M. Crawford,* with a brief over the name of *Watson, Beekman & Watson,* to this effect.

I. Courts of equity in this country have no concurrent jurisdiction in cases of fraud where the remedy at law is adequate and complete: Story, Eq. Jur. §§ 49, 61, 62; 2 Pomeroy, Jur. §§ 912–914; *Dows* v. *Chicago,* 78 U. S. (11 Wall.) 108–110; *Grand Chute* v. *Winegor,* 82 U. S. (15 Wall.) 373–377; *Teft* v. *Stewart,* 31 Mich. 367–378.

And such is the rule in this State both under the statute and decisions of the supreme court: 1 Hill's Ann. Laws, § 380; *Ming Yue* v. *Coos Bay R. Co.* 24 Or. 392–394 (33 Pac. 641); *Fleischner* v. *Citizens' Invest. Co.* 25 Or. 119 (35 Pac. 174); *Oregon & Cal. R. Co.* v. *Jackson County,* 38 Or. 589, 597–599 (64 Pac. 307, 22 Am. & Eng. R. R. Cas. 98).

II. A parol agreement between parties that one shall act as the agent of the other, or of both jointly, in the purchase of lands is within the statute of frauds: 1 Hill's Ann. Laws, § 781; 2 Story, Eq. Jur. (12 ed.), § 1201*a*; 1 Perry, Trusts (3 ed.), § 134; *Botsford* v. *Burr,* 2 Johns. Ch. *406, 408; *Green* v. *Groves,* 109 Ind. 519 (10 N. E. 401–405); *Monson* v. *Hutchin,* 194 Ill. 431 (62 N. E. 788); *Chenoweth* v. *Lewis,* 9 Or. 150–152.

III. All previous and contemporaneous negotiations and agreements merge in the deed of conveyance made in consummation thereof, and which thereby becomes the executed contract of sale and purchase, and conclusive evidence that the transaction was a sale and purchase,

and the relation of the parties that of sellers and purchasers: *Williams* v. *Hathaway*, 19 Pick. 387–389; *Howes* v. *Barker*, 3 Johns. *506–511 (3 Am. Dec. 526); *Hunt* v. *Amidon*, 4 Hill, 345 (40 Am. Dec. 283); *Slocum* v. *Bracy*, 55 Minn. 249 (56 N. W. 826, 43 Am. St. Rep. 499); *Clifton* v. *Jackson Iron Co.* 74 Mich. 183 (41 N. W. 891, 16 Am. St. Rep. 621–624); *Davis* v. *Clark*, 47 N. J. L. 338 (1 Atl. 239); *Jones* v. *Wood*, 16 Pa. St. 25; *Carter* v. *Beck*, 40 Ala. 599; *Timens* v. *Shannon*, 19 Md. 296 (81 Am. Dec. 632); *Bryan* v. *Swain*, 56 Cal. 616; *Davenport* v. *Whistler*, 46 Iowa, 287; *Gibson* v. *Risehart*, 83 Ind. 313–315.

IV. There is no resulting or constructive trust in any case, unless the amount paid is intended to be the purchase part of the whole, or of an aliquot part of the property: 1 Perry, Trusts (3 ed.), § 132; *McGowan* v. *McGowan*, 14 Gray, 119–122 (74 Am. Dec. 668); *White* v. *Carpenter*, 2 Paige Ch. 217, 240; *Skehill* v. *Abbott*, 184 Mass. 145 (68 N. E. 37); *Kaphan* v. *Toney*, 58 S. W. 909, 913.

V. False representations as to the price paid for property, inducing the purchase thereof by another, afford ground for rescission only, and no other relief: Cook, Stockholders, § 145; *Valton* v. *National Fund Life Assur. Co.* 20 N. Y. 32, 37; *Coles* v. *Kennedy*, 81 Iowa, 360 (46 N. W. 1088, 25 Am. St. Rep. 503); *McLaren* v. *Cochran*, 44 Minn. 225 (46 N. W. 408, 20 Am. St. Rep. 566, 9 L. R. A. 263.)

For respondents there was an oral argument by *Mr. Wirt Minor*, with a brief over the name of *Teal & Minor*, to this effect.

1. At the time of the agreement between the parties, the lands had not been purchased by the defendant, and in making the purchase the defendant acted as agent and trustee for the respondents as well as upon his own behalf: Story, Agency, § 3; *King* v. *Wise*, 43 Cal. 628;

*Hewitt* v. *Young*, 82 Iowa, 224; *Duryea* v. *Vosburg*, 138 N. Y. 621; *Crump* v. *Ingersoll*, 44 Minn. 84; *McNutt* v. *Dix*, 83 Mich. 328; *Wright* v. *Smith*, 23 N. J. Eq. 106; *Ellsworth* v *Pomeroy*, 26 Ind. 158; *Willink* v. *Vanderveer*, 1 Barb. 599; *Wright* v. *Calhoun*, 19 Tex. 412; *Dodd* v. *Wakeman*, 26 N. J. Eq. 484; *Cotton* v. *Halliday*, 59 Ill. 176; *Rose* v. *Hayden*, 35 Kan. 106 (57 Am. Rep. 145).

2. The relation of principal and agent is a fiduciary one and the rules of law governing other fiduciary relations govern also the relation of principal and agent: Perry, Trusts, §§ 173, 206; 1 Beach, Trusts, §§ 106, 192, 193 ; *Eldridge* v. *Jenkins*, 1 Story, 181.

3. The defendant acted as the agent of the plaintiffs as well as for himself in consummating the purchase of the lands. He, therefore, could not himself become the seller or make a profit out of his principals, or out of the transaction which he conducted for them even if such profit be collateral: *Willink* v. *Vanderveer*, 1 Barb. 599; *Davoue* v. *Fanning*, 2 Johns. Ch. 252 ; *Moon* v. *Moon*, 5 N. Y. 262; *Gardner* v. *Ogden*, 22 N. Y. 347 ; *Conkey* v. *Bond*, 36 N. Y. 427 ; *Duryea* v. *Vosburg*, 138 N. Y. 621 ; *Flagg* v. *Mann*, 2 Sumner, 521; *Michaud* v. *Girod*, 45 U. S. (4 How.) 503; *King* v. *Wise*, 43 Cal. 62; *Cook* v. *Woolen Mill Co.* 43 Wis. 433; *Northern Pac. R. Co.* v. *Kindred*, 14 Fed. 77; 1 Beach, Trusts, §§ 92, 192 ; Perry, Trusts, § 206 ; Story, Agency, §§ 210, 211; Kerr, Fraud, 173, 174.

4. In all contracts of an agent with his principal, if the agent has information and does not disclose the same to his principal, this is a fraudulent concealment, and the contract may be avoided, or the agent held to be a constructive trustee: Perry, Trusts, §§ 178, 206, 209 ; *Farman* v. *Brooks*, 9 Pick. 212 ; *Hendricks* v. *Nunn*, 46 Tex. 141; *King* v. *Wise*, 43 Cal. 628; *Newell* v. *Holbridge*, 41 Minn. 378; *Willink* v. *Vanderveer*, 1 Barb. 599 ; *Wright* v. *Smith*, 23 N. J. Eq. 106.

5. Notwithstanding the doctrine laid down by the Supreme Court of Massachusetts in *McGowan* v. *McGowan*, 14 Gray, 119, the courts of many other states have held that a trust, even in the absence of fraud or of unconscionable conduct, results to the parties furnishing the consideration to the extent to which they may have furnished the consideration for the purchase: *Pinney* v. *Fellows*, 15 Vt. 525; *Purdy* v. *Purdy*, 3 Md. Ch. 547; *Cecil Bank* v. *Snively*, 23 Md. 261; *Buck* v. *Swasey*, 35 Me. 41 (56 Am. Dec. 681); *Case* v. *Codding*, 38 Cal. 191.

MR. JUSTICE WOLVERTON delivered the opinion.

1. This is virtually a suit to have the defendant declared a trustee for plaintiffs to the extent of three sixteenths undivided interest in 9,716.67 acres of timbered land in Coos County, Oregon, to the undivided fourth of which tract defendant holds the legal title. Some time prior to June 17, 1902, the defendant procured an option to purchase the land from the original owners, who, in pursuance thereof, deposited their deeds of grant to him in escrow with the First National Bank of Portland, Oregon, the same to be delivered to him upon condition of his paying to the bank for the owners the agreed price at which defendant held the option. Being so circumstanced, he represented to plaintiffs — more particularly to Kroll, the principal actor in behalf of plaintiffs — that he had secured an option on about 10,000 acres of land at ten dollars per acre, which was the price he was to pay the owners, and that it could not be purchased for less; that the deal had been held up for several months on account of another option having been secured in the mean time upon a part of the tract; that he had previously interested some people in Houghton, Michigan, in the matter, and that they decided it would be well to have the deeds all made to one party and sent to the Houghton bank for

payment, when such party could deed to the others whatever interest they took, or he could deed direct to a company should they organize one; that he was compelled to await the expiration of the intervening option, but that latterly, finding it had expired, he had wired his agent in Oregon to close the deal, have the deeds made to him, and send them on to the bank at Houghton for payment, and that he was then ready to close the matter up, and proposed to plaintiffs that they take an interest with him in the purchase, as they, being lumbermen, would relieve him of some responsibility in arranging the matter; that he would take a fourth interest himself, and pay the purchase price therefor, and that they would get their interest at the same figure per acre as he would obtain his; that there would be no commission or bonus to himself or any one else; that all he would require was that they should share with him, according to their interest, in his traveling expenses and the expense of examining the lands, which would fall below $1,000, and also that they should pay in the same proportion a fee of $500 he had agreed to pay his attorney, Mr. Crawford, for examining the title; whereupon plaintiffs agreed to take a three-fourths interest jointly with him, Sparrow taking a one-half interest and Kroll a fourth, upon the terms proposed, the several parties to pay the purchase price in proportion to their respective interests, plaintiffs to reimburse defendant for the expenses he incurred and pay the fee for examining the title in like proportion.

This exposition of the understanding or agreement is amply supported by the testimony of Kroll, which is substantially corroborated by that of Sparrow, Rice, Messner, and Arthur H., son of William Kroll. Kroll testifies, in substance, that Coach told him he had talked with Sparrow about the land, who said to let witness know about it when he got in shape to purchase, and hence he had wired

witness; that Coach then stated that he would like Sparrow and witness to join in the purchase, as they were lumbermen, and would ·take some responsibility off of him in arranging the matter ; and that he had bought the lands directly from the owners, and not through an agent or commission man ; that he further said to the witness : "Now, Kroll, if you and Sparrow want to join me in this purchase, I will let you in on the ground floor. The purchase price of the property is ten dollars per acre, and you can have an interest at that price and I will take one fourth myself. Whoever joins me.will get their interest at the same price I get mine, and we will all fare alike"; that he further said to witness that there was no commission or bonus to himself or anybody else; that he had not added anything to the price of the land to cover his personal expenses, and that those joining him could jointly reimburse him according to their interests ; that he might not be able to get the deeds sent to Michigan for payment, as one fellow had refused to let his go; that he had the matter up by wire, and that, if the deeds did not arrive soon, he would have to go to Oregon again, and wanted to know how soon witness could give him an answer. Kroll further testifies that he went to Lansing, Michigan, saw Sparrow, and on June 20th wired Coach : "Have arranged for three quarters interest if satisfactory. Can go West with you early next week"; to which Coach replied : "All right. Try to arrange to go as soon as possible"; that when witness next saw Coach he told him he would take a fourth interest and Sparrow one half, and witness would go to Oregon with him, he having stated that the deed had not arrived ; that Coach said he would take one fourth interest himself.

The witness continues that, having concluded to go to Oregon, Coach said he would buy a draft for $25,000 to

pay for his interest, and advised witness to do the same; that witness bought a draft on New York for $25,000, started for Oregon on the 25th of June, met Coach in Duluth on the 26th, and both arrived in Portland on the 29th; that on their arrival they were informed that the deeds to Coach were in the First National Bank of that city; that witness examined the abstract, and was informed by Coach that the purchase had to be closed on that or the following day; that witness requested a week's extension of time in which to examine the land, but that Coach refused to give it; that on July 1st, having finished examining the abstracts, they went in the afternoon to the bank, and that witness there paid over to Coach, by draft on New York, $50,000, to pay for Sparrow's one-half interest, and $25,000 for his fourth interest; that a little later the deed for his and Sparrow's respective interests, executed by Coach, was handed to him, together with a rebate on the amount paid, intending to reduce the price of the tract to correspond with the exact number of acres covered by the deed, being less than 10,000, at ten dollars per acre, the amount retained being $48,148.80 of Sparrow's draft and $24,074.40 of witness' draft; that subsequently it was ascertained that 85.97 acres had been omitted from the estimate, three fourths of the value of which at ten dollars per acre witness agreed to pay to Mr. Crawford, and which was subsequently paid through the firm of Cotton, Teal & Minor, of Portland, being $429.85 in Sparrow's behalf and $214.93 in his own; that within a week, and before making the payment to Crawford, witness ascertained that Coach had paid not to exceed eight dollars per acre for the land in question; that before finally closing the arrangement Coach stated to witness in Portland, Oregon, that there was to be no bonus or commission to himself or any one else, and that, if witness and Sparrow paid their money, they would get their interest at the same

price per acre that he got his; that Coach said he was sure the land could not be purchased for less than ten dollars an acre, and that the final agreement was that plaintiffs should purchase jointly with Coach, who should take a quarter interest, Sparrow a half interest, and witness a quarter, and that they should own the land jointly; that it was further understood that they should pay Mr. Crawford $500 for his services in examining the title, which was subsequently done. It is also shown that plaintiffs relied upon Coach's representations as to the purchase price he was to pay for the land, and were deceived and misled thereby.

The defendant strenuously controverts this testimony and the foregoing rendition of the agreement in all essential particulars, and claims that he sold three fourths interest in this land directly to Kroll and Sparrow at ten dollars per acre, the sale having no reference to the price he was paying the holders. In this view he is corroborated but slightly, no one but himself pretending to testify to the terms of such an arrangement between him and Kroll as finally concluded. He admits, however, that the real price he agreed to pay the original holders for the land was concealed from plaintiffs, nor were they able to ascertain the truth about it until Kroll went in person to some of the vendors, receiving either misleading or evasive answers to all inquiries he made of defendant or those acting for him. The deed executed by defendant to plaintiffs was in form a warranty, Kroll refusing a quitclaim; but plaintiffs' money was used to pay for part of the interest that defendant obtained, he paying the balance. This is as far as it is necessary to take note of the testimony adduced, its trend being fairly indicated by the résumé given, and its cumulative effect constrains us to the view that plaintiffs' evidence is by a strong preponderance entitled to the greater weight. The first and most

vital question presented, namely, whether plaintiffs were purchasers from defendant, or the three were purchasers from the original holders, the defendant acting as the agent of plaintiffs in the transaction, is therefore solved in favor of the latter position.

The defendant had not the legal title to the land, or any part of it, before the consideration was paid to the original holders. The deeds running to him were deposited in escrow awaiting the payment of the consideration before their delivery, and it is well understood that such deeds did not become effective to convey the title until the condition upon which they were deposited was fulfilled. Defendant simply had what he aptly characterized as an option to purchase, and, having secured it, he dealt with plaintiffs as though they were purchasing with him under the option, the three to become joint purchasers of the property for the consideration that he represented he was paying to the holders; in other words, using his expressive language, plaintiffs were to be "let in on the ground floor"—that is, were to come into the purchase upon the same terms and conditions that he had made with the holders—with the further proviso, only, that they were to reimburse him according to their proportion for his expenses incurred in traveling and examining the property and the fee that he agreed to pay to Mr. Crawford for examining the title. It is palpably inconsistent with this understanding that plaintiffs should pay more for the lands than the defendant was to pay the original holders therefor under his option, for, if they did, they would not secure the same advantages to which he was entitled. Their interests, therefore, would cost them more than the defendant's interest would cost him. The defendant, without doubt, not only concealed from plaintiffs the real purchase price, but purposely misrepresented to them that he was paying to the holders ten dollars per acre, this

seeming necessary to him in order to induce plaintiffs to
join with him in the purchase under his option. This
was a fraud upon the plaintiffs. Fair dealing suggests
that, if they were to have all the advantages of a purchase
under his option, defendant should have fully disclosed
to them the real purchase price, and the fact that he con-
cealed and misrepresented it to them affords convincing
proof of plaintiffs' theory as to the agreement between
them and the defendant, viz., that they were to be let in
under defendant's agreement with the original holders.

The decree of the trial court directed that plaintiffs pay
to defendant $500 to reimburse him for his expenses and
the outlay incident to the purchase of the property, and,
upon such payment being made, that defendant convey to
plaintiff Sparrow one eighth and to Kroll one sixteenth in-
terest in the entire tract; otherwise that the decree stand
as and for such conveyance. It will be noted that the
amount actually paid as indicated by the testimony does
not equal the purchase price of a fifteen-sixteenths inter-
est of the tract at eight dollars per acre, but it was so in-
tended, and for all practical purposes it stands in that pro-
portion to the whole; the difference being seven dollars
and some odd cents, which must be attributed to an error
in calculation. It is to reverse this decree that the appeal
is prosecuted.

2. In the legal aspect of the case, the defendant assumed
a relation of trust and confidence toward plaintiffs. His
position was such that he had exclusive knowledge of
subsisting conditions affecting the venture that he pro-
posed, and the plaintiffs were dependent entirely upon his
representations, and relied upon them. In effect, he acted
as their agent, as well as for himself, in negotiating and
consummating the purchase from the original holders of
the land to which they subsequently acquired the title in
their own right. Such a relation enjoined upon the de-

fendant absolute good faith toward the plaintiffs, and he was in duty bound, in law as well as in ethics, to disclose to his principals all the knowledge attending the transaction that he possessed. If he had been dealing with them at arm's length, as his theory of the case would imply— that is, if he had been selling to them, instead of buying for them—the duty would have been otherwise. But he was not. He occupied the position of negotiating a joint purchase for the three, including the plaintiffs and himself, and plaintiffs were entitled to all the advantages jointly with him that he contracted for under his option with the original holders. According to his representations, they were securing all such advantages in the exact proportion that he was securing them, and, acting upon such representations, the purchase was consummated. It developed later, however, that he knowingly misled them as to a material fact in the transaction—one that would have influenced them to act differently, in all probability, if they had known of the true condition. The act was in palpable fraud of the plaintiffs' rights, and, as defendant thus secured an advantage he could not otherwise have obtained, he has through deception possessed himself of the plaintiffs' money to the extent of two dollars per acre for three fourths of the tract, which he applied toward the purchase of his own undivided one fourth interest, and in this he must be held to the accountability of a trustee *ex maleficio.* The authorities are ample in support of this view: *Wright* v. *Smith,* 23 N. J. Eq. 106; *McNutt* v. *Dix,* 83 Mich. 328 (47 N. W. 212, 10 L. R. A. 660); *King* v. *Wise,* 43 Cal. 628; *Willink* v. *Vanderveer,* 1 Barb. 599.

Agency is a fiduciary relation, which is one of trust and confidence, and "the same observations apply," says Mr. Perry in his work on Trusts (vol. 1, 4 ed., § 206), "as to other relations of trust and confidence." He further observes: " No person whose duty to another is inconsistent

with taking an absolute title to himself will be permitted
to purchase for himself, for no one can hold a benefit ac-
quired by fraud or a breach of his duty. All the knowl-
edge of the agent belongs to the principal for whom he
acts, and, if the agent use it for his own benefit, he will
become a trustee for his principal." With reference to
the same subject Mr. Beach says: "This is a fiduciary re-
lation, and the principles of equity by which the relation
of a trustee to his beneficiary is governed apply to the re-
lation of an agent to his principal. It is well settled that
any person sustaining a fiduciary relation toward another
in regard to property is bound to make use of all the
knowledge, to improve all the opportunities, to exercise
all the powers and rights of every description that he has
derived from his fiduciary position, or has acquired by
means of it, for the benefit of his *cestui que trust*. And on
the same principle he may not avail himself of these ad-
vantages to promote his own interest. The rule is in-
flexible that in every case in which a person is either
actively or constructively an agent for others, all the
profits and emoluments secured by him in the business
inure to the benefit of the employer": 1 Beach, Trusts &
Trustees, § 192. As to the liability of an agent to account,
and the extent to which he is required to render up his
gains and the emoluments secured through the relation-
ship, the court say in *Northern Pac. R. Co. v. Kindred*,
(C. C.) 14 Fed. 77, 80: "If an agent shall make any profits
in the course of his agency by any concealed arrangement,
either in buying or selling, or other transactions on account
of the principal, such profits shall belong exclusively to the
latter." To the like effect is the language of Mr. Mechem.
He says: "It may be stated as a general rule that the
agent is bound to account to his principal for all money
and property which may come into his hands during and
by virtue of the agency. This rule embraces not only

such money and property as may be received directly from the principal, but also that which comes into the agent's hands as the result of his agency. As has been seen in a previous section, to the principal belong all profits and advantages made by the agent beyond lawful compensation, whether such profit or advantage be the fruit of the performance or the violation of the agent's duty, or whether they are the result of transactions within or beyond the scope of his authority, provided the acts from which they accrue were assumed to be done in the behalf and for the benefit of the principal": Mechem, Agency, § 522. The defendant's position, therefore, being one of trust and confidence in his relation to plaintiffs with reference to the transaction under consideration, he can make no profit from his bad faith in deceiving and misleading the plaintiffs, and thus acquiring and investing their funds, as to which, or the proceeds arising therefrom, the law charges him as trustee by construction arising *ex maleficio*.

Nor can he be permitted to enjoy the benefits thus acquired which belong to his principals, and a court of equity will adjust them accordingly. Mr. Pomeroy says: "In general, wherever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, * * or through any other similar means, or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never, perhaps, have had any legal interest therein. * * The forms and varieties of these trusts, which are termed *ex maleficio* or *ex delicto*, are practically without limit. The principle is applied whereever it is necessary for the obtaining of complete justice,

although the law may also give the remedy of damages
against the wrongdoer": 2 Pomeroy, Eq. Jur. (2 ed.),
§ 1053. So, with Mr. Perry: "If a person obtains the
legal title to property by such arts or acts or circum-
stances of circumvention, imposition, or fraud, or if he
obtains it by virtue of a confidential relation and influence
under such circumstances that he ought not, according to
the rules of equity and good conscience as administered
in chancery, to hold and enjoy the beneficial interest of
the property, courts of equity, in order to administer com-
plete justice between the parties, will raise a trust by con-
struction out of such circumstances or relations; and this
trust they will fasten upon the conscience of the offending
party, and will convert him into a trustee of the legal
title, and order him to hold it or to execute the trust in
such manner as to protect the rights of the defrauded
party and promote the safety and interests of society.
Such trusts are called constructive trusts. They differ
from other trusts in that they are not within the intention
or contemplation of the parties at the time the contract is
made from which they are construed by the court, but are
thrust upon a party contrary to his intention and against
his consent": 1 Perry, Trusts (4 ed.), § 166. "In such
cases," says Mr. Bispham, "the interference of courts of
equity is called into play by fraud as a distinct head of
jurisdiction; and the complainant's right to relief is based
upon that ground, the defendant being treated as a trustee
merely for the purpose of working out the equity of the
complainant": Bispham, Equity (4 ed.), § 91. The doc-
trine is well settled, and is enunciated by this court in
*Parrish* v. *Parrish*, 33 Or. 486 (54 Pac. 352). From these
principles it follows irresistibly that the trial court was
right when it charged the defendant, as a trustee for the
plaintiffs, with an undivided three sixteenths of the tract,

or three fourths of the fourth interest to which he took the title in his own name.

3. At the risk of a possible restatement of the case in part, we may say the transaction amounts to this: Upon the defendant's representations, plaintiffs purchased, investing in these lands to the extent of a three-fourths interest; but in reality, taking into account the actual value paid for them, they invested to the extent of a fifteen-sixteenths of the whole. In other words, instead of purchasing with plaintiffs' money a three-fourths interest, defendant purchased a fifteen-sixteenths interest, and took the title to a three-sixteenths in his own name. Thus the defendant has secured a benefit accruing to himself with the funds of plaintiffs, and being so secured through his own *mala fides* he ought not to be permitted to retain it. To put the case in a clearer light: Suppose defendant had represented to plaintiffs that for the sum obtained he could purchase for them a distinct tract of land, say, 750 acres, but that in reality he purchased with the money another tract, consisting of 187½ acres, taking the title to this latter in his own name, would it be contended that defendant could retain the fruits of his own misrepresentation, although plaintiffs had obtained what they were led to believe and actually thought they were getting? That the parties were dealing with undivided and not segregated interests can make no practical difference as to the legal effect of the transaction. In either event defendant has procured something with plaintiff's money that he is not entitled to have or retain, and it is distorted logic to say that the plaintiffs are entitled to damages, but not to the land which their money has purchased. If the land were worth much less than the purchase price, defendant might be contending that the land, and not damages, was the only relief to which they were entitled. But, legally, they are entitled to either remedy, according to their own choos-

ing.  Defendant came by their money fraudulently, and has invested it in property.  Plaintiffs may now either ratify the purchase and accept the property, or recover damages for the defendant's fraudulent practices whereby he obtained their funds.  This solves also the question made by defendant that plaintiffs are without relief in equity because they have an adequate remedy at law.  The defendant has fraudulently procured and misappropriated funds of plaintiffs, which plaintiffs may follow into whatsoever form they may have assumed, and recover them in their changed and transformed condition.  This, together with the fact of fraud, or the *mala fides* of the fiduciary, accords to equity concurrent, if not exclusive, jurisdiction in the premises for their relief.

4.  Nor can the objection avail the defendant that the amount paid by plaintiffs in its purchasing value is not resolvable into an aliquot part of the tract of land purchased, as, according to the intention of the parties in making the estimate of payments, it is, on the contrary, exactly so resolvable.  The simple demonstration is that three fourths of the tract at ten dollars per acre equals fifteen sixteenths of the tract at eight dollars per acre, and this is what the money advanced to defendant paid for.  In further support of these principles, see *Barger* v. *Barger*, 30 Or. 268 (47 Pac. 702).  Furthermore, the case is not within the statute of frauds, arising, as it does, *ex maleficio,* requiring some note or memorandum of the transaction to be in writing: *Parrish* v. *Parrish*, 33 Or. 486 (54 Pac. 352).

Another question urged is that plaintiffs are estopped to insist upon their equities on the ground that they paid to defendant part of the purchase price after they discovered the fraud.  The fact is, as the testimony shows, that plaintiffs paid the whole of the purchase price by checks in the first instance, and by mistake in estimate more

money was returned to plaintiffs than they were entitled to. Upon discovery of this mistake Kroll agreed to repay the deficit to Mr. Crawford, and under this arrangement the subsequent payments spoken of were made. Such subsequent payments, it seems to us, were not tantamount to a ratification of the fraud perpetrated by defendant upon plaintiffs. The original agreement had been fully consummated, and what remained to be done was merely incident to the mistake of the parties in making the estimate; the final promise to Mr. Crawford being for the benefit of the owners, and not of the defendant. Having fulfilled this promise, it could not, from any conceivable equitable consideration, operate to estop plaintiffs from insisting upon their rights as against defendant.

Again, it is insisted that the insistence upon and acceptance of a warranty deed by plaintiffs from defendant concluded the parties as to the respective interests in the land to which they were entitled. It must be understood, however, that this deed was executed and accepted under the shadow of defendant's fraudulent representations; hence the form of the conveyance could have no weight in determining the rights of the parties, except that it afforded an incident, possibly, to show that plaintiffs were purchasers direct from defendant. But this, we are satisfied, was not the case. The defendant was to receive warranties from the owners, and, to make the chain of title uniform, plaintiffs required a warranty also. Virtually, this is all there is in the incident, and has no preclusive bearing in the case as to either party.

Having disposed of all the questions presented favorably to the respondents, the decree of the court below will be affirmed, and such will be the order of this court.

                                        AFFIRMED.

Decided 15 May, 1905.

ON MOTION FOR REHEARING.

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

5. The appellant, by his petition for rehearing, strenuously insists that the entire arrangement or contract subsisting between the parties touching the land, the subject of the purchase, was merged in the warranty deed executed by Coach and delivered to Kroll and Sparrow, and that henceforth the latter were precluded from setting up any other contractual relations than such as the deed witnesses. · The rule suggested that all previous and contemporary negotiations and agreements concerning the sale and purchase of land merge in the deed of conveyance, so that it becomes an express, entire, and final contract between the parties, may be conceded, but it is difficult to understand that it can have the least application to the case at bar. Of course, the fact that the deed was made was pertinent and strong evidence that the parties were dealing concerning the land in proportions as indicated by its terms; but it cannot stand as the final and conclusive contract between them, so as to exclude or preclude any other condition that the law might entail, where the transaction from the beginning is attacked for fraud, and it is made to appear that the grantees were induced to accept the conveyance through the deceit and fraudulent intrigue of the grantor. Thus, it was the theory of plaintiffs that, while the deed conveyed to them all the land they bargained for, yet it did not convey all that their money paid for, and consequently all that they were entitled to, looking throughout the transaction, and considering the relations the parties sustained to each other, and the method adopted by which the defendant procured the money of plaintiffs with which to complete the purchase.

The scheme was one calculated to mislead and defraud the plaintiffs, and we found, after a very careful scrutiny of the testimony, that such was its legal effect, and that defendant purchased more land with their money than they obtained a deed for, and that he ought to render up to them the overplus, having become trustee thereof *ex maleficio* for their use. Now, to say that the deed concludes the plaintiffs absolutely, as against the fraudulent intrigue of the defendant, when accepted and received without knowledge of the fraud, is to preclude them from any judicial inquiry into the matter whatever, and to send them away remediless. The deed is no more effective to conclude plaintiffs from inquiry touching the fraud than would the original contract have been, had it been wholly reduced to writing. But the defendant, having deceived the plaintiffs, and procured from them their money through fraud, while acting in the capacity of an agent for them, the law declares him a trustee *ex maleficio*, in spite of the contract which he induced them to enter into by misleading them as to the real terms of the purchase from the original owners. So it must hold him, because of his *mala fides*, a trustee of the land he purchased with plaintiffs' money, in spite of the deed which he in like manner and by the same fraudulent scheme or intrigue induced them to accept. No person can be precluded by any contract or writing that he has been induced to enter into through fraud or deceit, and the circumstance that the writing happens to be a deed of warranty, and executed with the greater solemnity, cannot alter the rule, so that we are constrained to hold that the plaintiffs are not precluded by the deed to insist upon the relief demanded.

AFFIRMED: REHEARING DENIED.